## LANG vs. WATERS' ADMINISTRATOR.

[ACTION ON PROMISSORY NOTE.]

1. *Plea; when sufficient as to form and substance.*—Pleas, in this State, have no technical forms as at common law. A succinct statement of the facts relied on in bar or abatement of the suit is sufficient, if the facts are so stated that a material issue can be taken thereon.—Rev. Code, §§ 2629, 2638.

2. *Set-off, plea of; what sufficient.*—Pleas of set-off which allege that the plaintiff is indebted to the defendant in a certain sum falling due on a day named, "by liquidated demand," or "by unliquidated demand," on which debt or assumpsit may be maintained, and which insist upon

Lang v. Waters' Adm'r.

such demand as offset against the plaintiff, is sufficient, if the facts are stated as required in the forms prescribed in the Code.—Code, §§ 2642–3.

3. *Same ; what evidence improper under.*—Under such pleas, evidence of an unliquidated demand sounding in damages merely, is improper, and should not be admitted.

4. *Note payable in dollars ; how only can be discharged.*—A promissory note payable in " dollars" can only be discharged by a tender of "dollars in legal tender currency," unless there is an agreement between the parties that it may be discharged in something else. A tender in "baled cotton " on such a note is not sufficient without such an agreement.

5. *Pleading ; discretion of court as to time allowed for.*—The court trying a cause may enlarge the time of pleading, or permit additional pleas to be filed, when this tends to the administration of right and justice. Such power is discretionary, and not the subject of revision in this court.

6. *Witness ; re-examination of ; matter of discretion.*—The court may also permit the re-examination of a witness, or the admission of additional testimony, after a party has closed the examination of his witnesses. This is also a matter of discretion, to be exercised in favor of right and justice, and is not revisable in this court.

7. *Wife ; in what case may be agent and witness for husband.*—The wife may lawfully become the agent or attorney of the husband, and as such she is a competent witness for him, except in " criminal cases," and in certain suits against executors and administrators —Rev. Code, § 2704.

8. *Same; agency of wife for husband, how may be proved.*—The wife, being the agent of the husband, may prove her agency, in a suit against him.

APPEAL from the Circuit Court of Choctaw. Tried before Hon. LUTHER R. SMITH.

THIS was an action by the payee against the maker, founded on a promissory note, dated December 26, 1859, and due January 1, 1862, for ten thousand four hundred and forty dollars.

Defendant pleaded four pleas—1st, payment, upon which issue was taken. The other pleas were as follows:

" 2d. Defendant says, as a defense to the action of plaintiff, that at the time said summons was sued out, the plaintiff was indebted to him in the sum of $15,000, by an unliquidated demand amounting to $15,000, stated above, the 1st day of March, 1863, and due at that date to the

defendant, which he hereby offers to set-off against the demand of the plaintiff, and he claims the judgment for the residue."

The third plea was identical with the second, except that the demand offered to be set-off was stated to be "liquidated."

The fourth plea (marked in the record as the fifth,) was as follows:

"The defendant for [answer to] said complaint, says that he tendered to the plaintiff two hundred bales of cotton, worth fifteen thousand dollars, in payment of the amount he claimed to be due before this action was commenced, and that he has always been ready and willing to perform this contract with the plaintiff, and offered to do so before this action was commenced."

Plaintiff demurred to the second, third and fourth pleas on the following grounds:

To the second plea, because it purports to be a plea by way of set-off, but fails to show a cause of action thereon against the plaintiff; 2d, because it does not show any unliquidated demand, or upon what said claim was based, so that plaintiff could prepare to disprove it; 3d, because it presents a conclusion of law, and does not show whether or no the claim of defendant is one sounding in damages merely.

The grounds of demurrer to the third plea were substantially the same as those to the second, the grounds being varied so as to assail the sufficiency of the plea of liquidated demand.

The plaintiff demurred to the fourth plea on the following, among other grounds: 1st, it is no answer to the complaint; 2d, it does not set up or show any agreement on the part of plaintiff to receive *cotton*, this being an action for *money*; 3d, said plea is informal and insufficient.

The court overruled the demurrer to each of the pleas, and thereupon plaintiff took issue thereon, and the parties went to trial.

The judgment entry recites that the jury being duly

"sworn to try the issues joined in this case, upon their oaths do say, we, the jury, find for the defendant."

It appears from the bill of exceptions, that defendant set up, and partly proved by several witnesses, as a defense to the action, that he set apart two hundred bales of cotton on his plantation, some time in 1862, to pay the note, and told his wife the purpose; that this was done on account of a message to that effect from plaintiff; that plaintiff was notified of this in 1862, and made an agreement with defendant's wife, as his agent, and in his absence, to accept the cotton, and that afterwards the wife of defendant, under and in pursuance of an agreement and understanding with plaintiff, sold the cotton for Confederate money, and transmitted the proceeds thereof to Boykin & McRae, who held the notes for collection, at Mobile, Alabama; that they refused to receive it, and that the identical money was then placed with Gates & Pleasant, at Mobile, on special deposit for plaintiff, &c. The bill of exceptions then states:

"The plaintiff objected to the introduction of defendant's wife as a witness on behalf of defendant, on the ground that she was incompetent; which objection the court overruled, and plaintiff excepted. The witness was asked, 'Did your husband leave an agent in his absence?' to which she answered, 'He did; I was his agent.' The question and answer was objected to by the plaintiff, upon the ground that she was not competent to prove herself to be the agent of her husband; but the court overruled the objection, and plaintiff excepted. She was then asked, 'Do you know of any settlement between plaintiff and defendant?' to which she answered, 'I know that defendant owed plaintiff a note; plaintiff told me so, and I knew it before.' The question and answer were objected to by plaintiff, which was overruled by the court, and plaintiff excepted upon the same ground as the above stated objection. Witness stated that she received a message from plaintiff, on his return from the army, that he wanted his money; a few days after, he called to see her, and asked her if she could pay defendant's note? She replied that

she did not have the money, but had two hundred bales of cotton. He replied that he did not want the cotton, but it would be an accommodation if she would sell the cotton and pay him before he went to Texas; if not paid before he left, he wanted the money paid to Boykin & McRae, in Mobile, and he would instruct them to receive it. She replied that she would sell it if he wanted it sold. Plaintiff said it would be an accommodation, and that if he had left for Texas when she received the money, she could pay the money to Boykin & McRae, in Mobile. She sent the money to them, and they replied that plaintiff passed through Mobile a few days before, and gave them no instructions to receive Confederate money. Told plaintiff she would sell the cotton and pay the money to Boykin & McRae. The witness could not say that she would know the same money. She gave the money to Mr. Hill to send to Gates & Pleasants, in Mobile, for safe keeping; did not use any of the money; told her husband where it was, and that it should be bonded; he replied that the cotton money must not be bonded. He afterwards brought it up home, and has had it, that which is in court, in possession five or six years just as it is. The cotton was sold in eight or nine days, and weighed and paid for in about three weeks after the interview with plaintiff."

"On cross-examination, witness stated that about three weeks after the interview with plaintiff, the cotton was sold and the money started to Mobile. Defendant told her the cotton was set apart to pay plaintiff. Defendant told her that [if] plaintiff required it, to sell the cotton and pay the debt. She sold the cotton in opposition to her feelings. Did'nt know, of her own knowledge, that the money was tendered; she was told so. She had special instructions from defendant to take good care of the cotton, that it was plaintiff's. Defendant told her the money was not to be bonded. Had all the cotton sold in 1863 shipped in 1864, except twenty-five bales that were torn to pieces; that was out of the two hundred bales. The cotton was shipped to Battle & Co., and to John Scott. In 1863 defendant made about one hundred bales; in 1864, some fifty or sixty; in

1865, did not know. The cotton shipped was signed A. G. Waters, by me, as his agent in the same to the contract of shipment. She had no cotton of the kind. She only sold two hundred bales; did not remember, and did not believe she sold any more, and this was sold at the request of Lang, the plaintiff, to pay his debt. Plaintiff did not tell her he did not want to leave so much money behind.

"Defendant's attorney asked the witness, Mrs. Waters, if she or her husband used the money, the proceeds of the sale of cotton. Plaintiff objected, upon the ground that she was not a competent witness to prove what use was made of the money by her husband. The court overruled the objection, and plaintiff excepted. Witness answered that they did not use the money; that she told her husband the money should be bonded, and he told her it must not be bonded, but must be kept for Lang.

"The plaintiff's attorney objected to the answer—1st, because she was not competent to make such proof; 2d, because Lang could not be bound or prejudiced by any such conversation; 3d, because it was not responsive to the question. The court overruled the objection, and plaintiff excepted. Plaintiff moved to exclude the answer from the jury, for the same reason; the motion was overruled, and plaintiff excepted. Witness testified that her husband told her he owed a debt to Lang, and also instructed her, if Lang desired it, to sell the cotton and pay him.

"To each several question propounded to the witness, Mrs. Waters, and to which responses were made as hereinbefore set out as her evidence, the plaintiff objected—1st, upon the ground that she, being the wife of defendant, was not a competent witness for him to prove the facts inquired after; 2d, because said witness testified to conversations with, and statements by, her husband, had and made when plaintiff was not present. The court overruled each several objection, and plaintiff excepted to each several ruling of the court overruling his said objections."

The bill of exceptions then states that the "defendant proposed to introduce George F. Smith as a witness; the

plaintiff objected on the ground that he had closed his evidence, but the court overruled the objection, and permitted the witness to testify, and plaintiff excepted."

From the bill of exceptions it appears that A. G. Waters, the defendant, was examined as a witness in his own behalf, testified, and was cross-examined. After this two or three other witnesses were examined in behalf of the defense, and the bill of exceptions states, "A. G. Waters was again introduced, plaintiff objected, which objection the court overruled, and permitted Waters to testify, and plaintiff duly excepted." Neither the purpose for which the witness was put upon the stand a second time, nor the grounds of the objection to him, are referred to in any manner, except as stated in the above quotation from the bill of exceptions. It would appear, from reading his testimony as set forth in the bill of exceptions, that Waters was recalled to testify as to what was done with the Confederate money, the proceeds of the cotton, and his instructions as to the disposition of it after the refusal of Boykin & McRae to receive it; which were matters about which he did not testify on his first examination.

Appellee having died during the pendency of the appeal, his administrator was made a party in his stead.

Plaintiff took a bill of exceptions on the trial, and reserved numerous exceptions to the rulings of the court. It is only necessary, however, to notice such of the exceptions as were passed upon by this court.

The rulings excepted to, and the action of the court in overruling the demurrer, are now assigned for error.

BROOKS, HARALSON & ROY, and GLOVER & COLEMAN, for appellee.—I. The court erred in overruling plaintiff's demurrers to the pleas numbered 2, 3, and 5.

The second plea was bad for uncertainty. "A plea of set-off must describe the debt intended to be set off, with the same certainty as in a declaration for like demand." 1 Chit. Pl. 607. A declaration on a demand, describing it as "an unliquidated demand for $15,000, dated about the 1st of March, 1863, and due at that date," would have

Lang v. Waters' Adm'r.

been a bad declaration even under the liberal rule of pleading established by the Code. It would have shown no cause of action.

II. The third plea is also bad—1st, for uncertainty; 2d, as stating a legal conclusion.

1. It shows no cause of action which would have supported a declaration.—Authority *supra*. If the term "liquidated demand" be considered equivalent to the term "account stated," it would still have been necessary, in order to secure the certainty in pleading required by law, to set out when and by whom the demand was liquidated, (Forms in the Code, 674,) that the opposite party may have an opportunity to disprove the same. The rule as to a declaration is—

"That these and all other circumstances essential in law to the action, must be stated with such certainty, precision and clearness, that the defendant, knowing what he is called upon to answer, may be able to plead a direct and unequivocal plea; and that the jury may be enabled to give a complete verdict upon the issue; and that the court, consistently with the rules of law, may give a certain and distinct judgment upon the premises."—1 Chit. Pl. 286.

And we have seen that a plea of set-off must describe the demand with the same certainty as a declaration. 1 Chit. Pl. 607, 267, 268.

2. The third plea is bad as stating a legal conclusion in the use of the term "liquidated demand." The terms "liquidated and unliquidated demands," are used in section 2642 of the Code to express legal conclusions, and the plea, to be good, must have stated the facts from which to draw the legal conclusion of a "liquidated demand." The jury can not define a "liquidated demand," nor the court determine the fact of liquidation; and the plea should have stated the particular facts which, if true, would have constituted a "liquidated demand."—1 Chit. Pl. 574; Gould Pl. ch. 3, § 12; *Darrington v. Walsh & Emanuel*, 26 Ala. 619.

The fifth plea is bad. It is no answer to a declaration on a moneyed demand, to say that defendant tendered

plaintiff two hundred bales of cotton worth $15,000. The admission of every fact stated in the plea would in no wise affect the plaintiff's rights as set forth in the declaration. "A plea must be adapted to the nature of the action, and conformable to the declaration, and must deny, or admit and avoid, the facts stated in the declaration."—1 Chit. Pl. 552, 554, 556.

A plea of tender of cotton would only be good in a suit for cotton; and a plea of tender of nothing except money is good to an action on a contract for the payment of money.—2 Parsons Contr. 149, 163. If the plaintiff had agreed to receive cotton in payment of the note, such agreement should have been set out, and made the basis of the plea.—1 Chit. Pl. 267-8, 607.

The wife was incompetent to prove her agency. In *Robinson v. Robinson* the court *permitted* the trustee *forced by law upon the wife*, to be a witness for her as to what he did with the trust property. The defendant was not forced to appoint his wife agent. Public policy forbids the stretching of the rule further.

A. J. WALKER, and REAVIS & COOKE, *contra.*—The second and third pleas are good. They conform to the form prescribed. The second plea alleged the set-off of an unliquidated demand, and gives its amount, date, and the person to whom it was due. The third special plea varies from it only in setting up a liquidated demand. It may be conceded that these pleas would have been bad at common law, but if conformable to the form prescribed in the Code they are good. Even indictments in the prescribed form are good, although not stating the constituents of the offenses charged. The form will be found on pp. 678-9 of the Revised Code.

The overruling of the demurrer to the plea marked No. 5 would not have prejudiced the plaintiff. The bill of exceptions, as will be seen by reference to the transcript, sets out all the evidence. The court having all the evidence before it, must see that no testimony was introduced to support the plea of the tender of cotton. The strongest

tendency of the evidence was to show an offer to pay in cotton, which was rejected, and met by a counter proposal that Mrs. Waters should sell the cotton and pay the money to Boykin and McRay, if the plaintiff had left for Texas.

A party can not be injured by the allowance of an improper plea, when no evidence is introduced to support it. An injury results from an improper plea, only when a recovery is had or may have been had under it. If no evidence is introduced in reference to it, it is practically abandoned, and should be treated as abandoned. In fact, the evidence conduced to show a payment.

Mrs. Waters was a competent witness for her husband. The objection of interest is swept away, and now the competency of the wife to testify for her husband is the clear result of the reasoning and authorities of this court in *Robison v. Robison*, (44 Ala. R. 227.) A wife may be the agent of her husband, and there is a necessity that she should be a witness in matters of agency and trust.— 1 Greenleaf on Ev. page 383, § 334, note 3; *State v. Neal*, 6 Ala. 685.

The conversation between Mrs. Waters and her husband, in which the latter informed the former of his debt to the plaintiff and instructed her to sell the cotton and pay it, was a fact in the case establishing the agency, and was therefore admissible.

While a tender could not legally be made in Confederate money without the plaintiff's authority, it could be made with such authority. The question, whether there was such authority, was a proper one for the determination of the jury. The evidence of such tender was, therefore, admissible.

PETERS, J.—The action of the court below upon the demurrers will be first considered. The pleadings in this State are regulated by statute. Pleas with us can hardly be said to have any technical names or technical forms, as at common law. A succinct statement of the facts relied on in bar or abatement of the suit is sufficient, if the facts

are so stated that a material issue can be taken thereon. This is the rule that must govern in their construction.— Rev. Code, §§ 2629, 2638. In this case there is no controversy about the first plea. It is only the second, third, and fourth pleas that are objected to by the demurrers. The statement of facts made in the second and third pleas are set up by way of set-off. These will be considered by themselves. They are substantially in the form prescribed by the statute, and use the language given for such pleas in the schedule of forms appended to the Code. In such a case, a statement of facts that would support an action of debt or assumpsit would be enough to make such pleas good. We think the facts in these pleas are sufficient for this purpose. In the first, the allegation is, that the plaintiff, at the commencement of the suit, was indebted to the defendant in the sum of six thousand dollars, due March 1, 1863, "by an unliquidated demand" of that date, and the defendant insists upon this debt as an offset. The other plea in this series is almost in the same words, except it is stated that the set-off is founded on a "liquidated demand" for fifteen thousand dollars, which is also insisted on as a set-off to the plaintiff's debt. Such pleas are very clearly within the purpose and the language of the statute, and according to the form of pleas prescribed in the Code. This is enough.—Rev. Code, § 2642; *ib.* p. 673, Form *Set-off.* The demurrers to these pleas were properly overruled. If, under such pleas, the defendant should offer proof of an unliquidated demand sounding in damages merely, it should be rejected; because such demands are not the subject of set-off under our statute. And there is no set-off at common law.—Revised Code, § 2642; *White et al. v. The Governor, use, &c.*, 18 Ala. 767.

The fourth plea, which is numbered *five* in the record, is defective. It does not show any indebtedness on the part of the plaintiff to the defendant, or any agreement by the plaintiff with the defendant to receive the two hundred bales of cotton in discharge or satisfaction of the debt sued for. This is necessary. A suit at law for the payment of a certain sum of money on a contract, is, in effect, a suit

for a specific performance.—*Robinson v. Bland*, 2 Burr. pp. 1077, 1086; *Rudler v. Price*, 1 H. Bl. 547.   The answer to such an action should show performance, or that the contract was such that the defendant was not bound to perform it, or had been excused or discharged by the plaintiff's agreement, or by operation of law.   Therefore, the plaintiff could not be required to receive the cotton on a contract to pay money, unless he had in some way bound himself to do so, or unless the law so compelled him; and the facts stated in the plea should show this.—Rev. Code, §§ 2648, 2649.   A note payable in dollars can only be discharged by a payment or tender of legal tender funds.   And baled cotton is not such funds.—Const. U. S., art. 1, § 10, cl. 1; Paschall's Const. U. S. p. 153; *Legal Tender Cases*, 11 Wallace, 682.   To the defects of this plea, one of the demurrers is especially directed.   The court therefore erred in overruling it.   It is, however, contended by the learned counsel for the appellee, that this was error without injury. It does not so present itself to us.   For aught that otherwise appears, or can be legitimately inferred from what is exhibited in the record, it may have been upon this plea that the jury founded their verdict.   A general finding, on all the pleas, supports such a presumption upon the evidence in this case.

There are one or two other objections made to the ruling of the court below, which need to be settled in order to free the case from their embarrassment in the future.   One of them was the objection to filing additional pleas after issue joined on the first plea.   There was no error in this. The defendant is authorized, by leave of the court, to file as many several pleas as he may be advised are necessary for his defense.   If the court permits the pleas to be filed, this is sufficient leave to bring its action within the statute. Rev. Code, § 2639; Shep. Dig. p. 727, §§ 305, 306.   The court has also clearly the power to enlarge the time of the pleading.   This is a matter of discretion, and it should not be refused, when it tends to the administration of right and justice.—Rev. Code, §§ 2662, 2663; Const. Ala. art. 1, § 15.   And in the exercise of this discretion, the court be-

low must be the judge whether it is properly or improperly administered. It is not a subject of error and revision here.—*Bobe v. Frowner*, 18 Ala. 89; *Newman v. Pryor*, 18 Ala. 186. The allowance, then, of the additional pleas was not erroneous.

The recalling the witness who had been examined, under the facts in this case, and his re-examination, was also matter of discretion in the court below. So was the admission of additional evidence by the defendant after he had closed the examination of his witnesses. There is no peremptory statute upon this branch of practice which forbids the court so to act. It is a discretionary power, and it is not to be presumed that it will be used otherwise than in furtherance of right and justice; and this is the end of all law. *Ipsæ leges capiunt ut jure regantur.*—3 Chitt. Gen. Pr. pp. 901–2, marg.; Coke's Litt. 174, *b.*

The wife may lawfully become the agent or attorney of the husband, and her acts will bind him, when she acts as such within the compass of her authority.—Story's Agency, § 7, and cases cited; *Lyon & Co. v. Kent, Payne & Co.*, 45 Ala.

The wife is also a competent witness for the husband in all "suits and proceedings before any court or officer, other than criminal cases," except in certain instances, in suits or proceedings by or against executors or administrators.— Revised Code, § 2704; *Robison v. Robison*, 44 Ala. R. 227. There was no error, then, in permitting the wife to testify as a witness for the husband in this case in the trial in the court below. It hardly needs remark, that the wife's conversations with the husband are incompetent, unless they are a part of the *res gestæ.* What she told him to do with the cotton or the Confederate money was not of that character. Such declarations were improperly admitted.— *Thompson v. Bowie*, 4 Wall. 463; 1 Greenl. Ev. §§ 108, 109, *et seq.*

There can be no doubt, under the law as settled by this court before the statute of February 14th, 1867, an agent was competent to prove his own authority.—*Gayle v. Bishop*, 14 Ala. 552, 554. But since the statute, any reasons which

might then have existed against it are certainly removed. Interest does not now disqualify a witness in any way. In civil cases all are competent, unless executors or administrators are parties, under certain circumstances.—Revised Code, § 2704. The wife, then, was a competent witness to prove her agency, in a suit where her husband was a party.

We purposely omit any notice of the charges given or refused by the court, because the case will have to be sent back for a new trial, and the charges can not be discussed without the expression of some opinion on the evidence, which might be misconstrued or improperly used on a new trial.

The judgment of the court below is reversed, and the cause is remanded for a new trial.