# Fitzpatrick Square Bale Ginning Co. v. McLaney.

## Money Had and Received.

(Decided Nov. 28, 1907.    44 So. Rep. 1023.)

1. *Master and Servant; Contract of Employment; Wrongful Discharge.*—One wrongfully discharged may sue his employer, whether he obtained or failed to obtain other employment, and the employer may reduce the recovery by proof of other employment or that the employee might have obtained same by reasonable diligence.

2. *Same; Defense.*—A plea which sets forth a contract of employment, a breach by wrongful discharge of the employe and the employe's readiness to comply with the contract, is a sufficient answer to an action for money had and received by employer against employe; such plea need not aver that he failed to obtain other employment after reasonable effort to do so, the failure being available in reduction of damages only, and a matter for a replication.

3. *Same; Evidence; Admissibility.*—In an action for money had and received, begun by an employer and defended by the employe on the theory that the money was due him on account of his wrongful discharge, and the employer replied that he failed to give his entire attention to the business, it was competent for the employe to show that, on his discharge, the employer engaged the services of the representative of a competitor and permitted him to serve both employers.

4. *Same; Contract of Employment; Modification.*—Where the contract of employment was complete, a letter written to the employe by the manager of the employer purporting to embody the terms of employment, not assented to by the employee, did not change the employment.

5. *Same; Evidence; Instruction.*—On an issue as to whether the contract of employment contained a provision for satisfactory ser-

[Fitzpatrick Square Bale Ginning Co. v. McLaney.]

vices, and there was a question as to whether the contract was completed before a letter was written by the manager of the employer to the employe, purporting to embody the terms of employment, a charge asserting that if the contract was completed before the letter was written the letter did not change the terms thereof, though the employe retained it without repudiating its condition, was not erroneous on the theory that it eliminated a consideration of the letter in determining the terms of the contract.

6. *Same; Discharge of Employe; Grounds.*—Where an employer after knowledge of the employe's dereliction of duty, keeps such an employe in its employ, and after reasonable opportunity to discharge him, after a discovery of the dereliction, fails to do so, it cannot subsequently discharge him because of such dereliction.

7. *Same; Evidence; Instruction.*—Where the evidence showed that some of employe's derelictions were known to the manager of the employer at least fourteen days before his discharge, that one of the breaches complained of was employe's failure to personally make out and sign daily reports and that the manager had received a large number of such reports, some of which were not signed by the employe, a charge asserting that if the employer, after knowing of the dereliction of duty, condoned the same by keeping the employe in its employ, it could not subsequently discharge him therefor, is not objectionable as being unsupported by the evidence.

8. *Money Had and Received; Evidence; Admissibility.*—Where the employe admitted a demand for the money and his refusal to pay it over, asserting that he rightfully withheld it to be applied to his claim of set off on account of his wrongful discharge, it was not error to sustain an objection to a question to the employe whether he had appropriated the money to his own use. If he rightfully withheld the money, it did not matter whether he had used it or not, and if he wrongfully withheld it he was liable whether it had been misappropriated or not.

9. *Appeal; Harmless Error; Abstract Instruction.*—The giving of an abstract instruction is not reversible error unless the jury is misled thereby to the prejudice of the party complaining.

APPEAL from Bullock Circuit Court.

Heard before Hon. A. A. EVANS.

Action for money had and received by the Fitzpatrick Square Bale Ginning Company against Robert McLaney. From a judgment for defendant, plaintiff appeals. Affirmed.

The first count of the complaint is in statutory form for money had and received. The second count alleges an employment of defendant by plaintiff, and a receipt by defendant from plaintiff of various sums of money by virtue of such employment, to be used and expended

by him in and about the business of plaintiff; a discharge of defendant, and an accounting as to the money in the custody and control of the defendant belonging to plaintiff in the sum of $203.50; a demand and refusal, etc. The defendant filed special plea No. 3, among others, as follows: "Now comes the defendant, and as a defense to the action of the plaintiff saith that at the time said action was commenced the plaintiff was indebted to him in the sum of $135, due by the plaintiff to the defendant from September 29, 1906, to December 13, 1906, as damages due by the plaintiff to the defendant, in this: That on the 16th day of August, 1906, a contract or agreement was entered into between the plaintiff and the defendant, whereby the defendant was to work for and labor for the plaintiff as superintendent of its ginnery plant at Fitzpatrick, Ala., for the period of five months from said date, at the rate of $55 per month, and that on the 29th day of September, 1906, the defendant was discharged by plaintiff without fault on his part, and that from said time until the expiration of the period covered by said contract the defendant held himself ready to perform the services which he contracted to perform, which he hereby offers to set-off in the sum of $135.66 as due by plaintiff to defendant for services from September 29, 1906, to December 13, 1906, against the demands of the plaintiff, which sum is still due the plaintiff by the defendant and unpaid." Demurrers were interposed to this plea as follows: "That said plea does not show that the defendant has been damaged by his discharge, in that he failed after reasonable effort to obtain employment of a similar character in that community. The plea does not show that defendant made any effort to obtain any employment of a similar character in that community and failed after his discharge by the plaintiff." These demurrers were overruled.

The evidence tended to show an employment of defendant by plaintiff to superintend its ginnery during the ginning season for about five months, satisfactory service in the meantime, at $55 per month. The general manager testified as to the verbal contract, and that after returning to his headquarters he wrote a letter confirming the contract, as was his custom. He testified, also, that the defendant was to give his entire time and attention to superintending the business, buying seed, etc., and making daily reports on blanks to be furnished. It was admitted that 31 of these were made; but it was contended that 14 of them were signed by some other person than the plaintiff. The letter above referred to is as follows: "August 16, 1906. Mr. Robert McLaney, Superintendent, Fitzpatrick, Alabama: In accordance with our conversation this morning, we will give you $55 per month as superintendent to take charge of the Fitzpatrick ginnery for the season of 1906-07, which will comprise about five months; satisfactory service in the meantime. I am writing the Atlanta office by today's mail to send you check for $150 for current expenses and to pay for wood as it comes in, so will ask you to take receipts for everything, keeping a correct record of the same, and forward receipts to me as you get them, until I can get down there to start you off. Please acknowledge receipt of this letter." This letter was never answered. Mr. Tillery testified that he was ginner at the time and made out reports for Mr. McLaney sometimes at Mr. McLaney's direction and consent. The other evidence sufficiently appears from the opinion.

In his oral charge to the jury the court, among other things, said "that in determining whether or not the contract made between the plaintiff and the defendant contained a provision for satisfactory services, if they believe from the evidence that the contract

between the plaintiff and the defendant was completed at Fitzpatrick at the time testified to, and no stipulation was then made for his services being satisfactory, they could not consider said term 'satisfactory service' as being part of the contract, even though the general manager of the plaintiff on the same day, after his return to Union Springs from Fitzpatrick, wrote the defendant the letter offered in evidence which stated that defendant's employment was subject to satisfactory service. If the contract was made at Fitzpatrick, and contained no agreement or understanding that the defendant's services should be satisfactory, the plaintiff could not incorporate that term in the contract afterwards by writing the letter offered in evidence, and the fact that the letter was received by the defendant on the same day, and no objection to its terms was made by him to the plaintiff, did not bind him or make the letter a part of the contract, even though, after it was received by him, he continued in the service of the plaintiff; and if the contract had been previously made at Fitzpatrick, as testified to by the defendant, it was not incumbent upon him to take any notice of said letter." Objection was made to the following part of the oral charge: "That if the jury believe from the evidence that the defendant had failed himself to make out and sign the daily report which had been required of him, and had permitted others to perform this duty for him, such dereliction of duty, if known to the plaintiff at the time it occurred, may have furnished a sufficient ground for the discharge of the defendant; but the plaintiff could not, after a knowledge of such dereliction of duty and after it had reasonable time and opportunity to discharge him, continue the defendant in its services and subsequently discharge him, and give as ground or reason for his discharge such previous dereliction of duty." Objection

was also made to the following part of the oral charge: "That if the plaintiff knew of any dereliction of duty or violation of his contract on the part of Mr. McLaney, and after such knowledge came to it and it had reasonable time and opportunity to discharge him, and it continued him in its service, it could not afterwards discharge him on account of such violation or dereliction of duty; and that the retention of the defendant in its service after the knowledge of such dereliction of duty had come to it, and it had had reasonable time and opportunity to discharge him, amounted to a condonation of such dereliction of duty, and it could not discharge him and offer in defense of such discharge the dereliction of duty which it had previously known."

J. D. NORMAN, for appellant. The court should have sustained demurrers to the plea of set-off, and only testimony relevant to the issue raised by the plea ought to have been permitted to go to the jury.—*Wharton v. Cunningham,* 46 Ala. 596. The tendency of the testimony as to the buying of seed and other things was to distract the minds of the jury from the real issue in the case, and such evidence should not have been permitted. —1 B. & J. on Evidence, sec. 136. The charges were invasive of the province of the jury.—*Jonas v. Fields,* 83 Ala. 445; *Drennen v. Satterfield,* 119 Ala. 85.

TOM S. FRAZER, for appellee. The plea was in code form and sufficient, and the demurrer set up defensive matter which was properly a subject for replication. Counsel discuss other assignments of error, but cites no authorities in support of his contentions.

ANDERSON, J.—An employe wrongfully discharged does not lose his right of action against his employer by

reason of having sought and obtained employment, or for failing to obtain employment when he could have done so. The defendant may reduce the amount of recovery by showing such other employment, or that plain tiff might have obtained other employment by the exercise of reasonable diligence; but these facts could not be used to defeat entirely plaintiff's cause of action.—*Wilkinson v. Black,* 80 Ala. 329; *Morris Co. v. Knox,* 96 Ala. 320, 11 South. 207; *Troy Co. v. Logan,* 96 Ala. 619, 12 South. 712. The defendant's plea of set-off, No. 3, set up a good cause of action, towit, the contract and breach by the plaintiff, and the defendant's readiness and willingness to comply with same, and it was not necessary for it to aver that the defendant failed to obtain other employment of a similar character after making a reasonable effort to do so. Said failure could be used only in reduction of damages, and was the subject of replication by the plaintiff, rather than an essential averment to establish the breach relied upon in the plea of set-off.—*Lang v. Waters' Adm'r,* 47 Ala. 624. The trial court did not err in overruling the demurrer to this plea.

The trial court did not err in permitting the defendant to prove that Porter Jones was buying seed and acting as the representative of the Southern Oil Company at the same time the defendant was working for plaintiff, and that immediately after defendant was discharged the plaintiff employed said Jones and permitted him to continue to represent the Southern Oil Company, as well as plaintiff. There was a conflict between the defendant's evidence and that of Sheftall, the general manager for the plaintiff, both as to the nature of the contract and a failure of defendant to comply therewith. The fact that immediately upon defendant's discharge the plaintiff employed the representative of a competi-

[Fitzpatrick Square Bale Ginning Co. v. McLaney.]

tive seed buyer and permitted him to serve both masters creates an inference that the two concerns were acting in concert and could accomplish with one man what had previously required the service of two, and was a fact to be considered by the jury in ascertaining the true contract, and whether or not there was a breach. If the plaintiff had reasons for getting rid of the defendant, regardless of a breach of the contract, this would be a fact tending to corroborate the defendant, and going to the discredit of Sheftall, the manager and witness for the plaintiff.

The trial court did not err in refusing to permit the defendant to answer plaintiff's question, "Have you used or appropriated to your own use this sum of money, which you state you refused to turn over to the plaintiff?" Whether or not the action of the court was justified in this ruling, because an answer to the question would incriminate the witness, we need not decide, as the ruling can be justified upon another ground. The answer would have been utterly immaterial. The defendant had just admitted that he withheld the amount and that there had been a demand and refusal. This fact had been testified to both by the defendant and Sheftall, and over it there was not the slightest conflict. If he rightfully withheld the money, it made no difference whether he had used it or not; or, if he did not rightfully withhold it, he was liable to the plaintiff for it, whether he had appropriated it to his own use or not. If the amount withheld could not be applied to defendant's plea of set-off, the plaintiff was entitled to recover, whether the defendant merely withheld it or used it. His liability was the same in either event.

There was no error in the first part of the oral charge excepted to by the plaintiff. We do not think it invaded the province of the jury, as claimed in brief of counsel,

38  R

upon the idea that it excluded from their consideration the letter from Sheftall to the defendant. The charge in substance instructs the jury that, if the contract was completed before the letter was written, the things contained in said letter did not change the contract, and that the reception of the letter by the defendant, and its retention by him without a repudiation of same, did not render it a part of the contract, and that it was not incumbent upon the defendant to take notice of it. If the contract was completed before the letter was written, a subsequent written statement by one of the parties could not change its terms, and the defendant had the right to stand on the contract that he really made, and was not called upon to combat Sheftall as to what he claimed was his understanding of the contract, or in his attempt to set up another one. While it was not incumbent upon the defendant to repudiate the letter, we do not mean to hold that his silent retention of same was not a circumstance for argument of counsel and for the consideration of the jury in weighing the evidence as to when the contract was made and in determining what was its contents, which were disputed questions; but we do not understand the charge as eliminating from the jury a consideration of the letter for any purpose.

So much of the oral charge as is the basis of assignments 10 and 11 was free from error. If the plaintiff, after knowing of the dereliction of duty by the defendant, condoned the same by keeping him in its employ, and it had a reasonable time and opportunity to discharge him after a discovery of said dereliction, and failed to do so, it could not subsequently discharge him because of such acts or omissions. It is insisted by counsel that this part of the charge was abstract, because there was no proof that the plaintiff knew of the derelictions of the defendant previous to the discharge.

[Southern Timber & Investment Co. v. Poe.]

There was evidence that some of said derelictions were known to Sheftall at least 14 days before the discharge; that is, that might create an inference of knowledge. One of the breaches complained of was defendant's failure to personally make out and sign the daily reports, yet Sheftall admitted having received 31 of these reports, and that, while they were all signed in the name of the defendant, his name was signed to 14 of them by some other person. Moreover, while the trial court will not be reversed for refusing abstract charges (*Tenn. Co. v. Danforth,* 112 Ala. 80, 20 South. 502), it will not be reversed for giving them, unless it appears that the jury were thereby misled to the prejudice of the appellant.— 2 Mayfield's Dig. p. 565, and cases cited under section 67.

The judgment of the circuit court is affirmed.

TYSON, C. J., and SIMPSON and DENSON, JJ., concur.