94 So.2d 411

**Harry H. WHITING, d/b/a National Sales System,**

v.

**Mack DODD, d/b/a Dodd Furniture Company.**

**6 Div. 396.**

Court of Appeals of Alabama.

April 9, 1957.

Bill Fite, Hamilton, for appellant.

Elliott & Jackson, Jasper, for appellee.

CATES, Judge.

Whiting brings appeal here from a non-jury judgment of the Marion Circuit Court in an action for breach of contract brought by him against Dodd. The court held that there was a valid and subsisting contract between the parties, that the defendant breached such contract, and that the plaintiff sustained only nominal damages as a result of such breach. It consequently awarded a recovery of $1 and costs.

The defendant, Dodd, wanted to close out his furniture business and retire. On November 21, 1953, Whiting, through his agent, Mr. L. L. Gore, entered into an agreement with Dodd reading as follows:

"Dodd Furniture Co. of Winfield, Ala. being the owner and manager of a stock of Furniture & Appliances located at Winfield, Ala. hereby contracts with the National Sales System for a sale, and the National Sales System hereby agrees to supply them with a capable sales manager to manage and conduct a special sale of such stock, said specialist to arrive on Jan. 4 or 11–1954, open the sale on Soon as Ready and to remain with This Store until and including Four Weeks. I will pay for this service a fee of Three Hundred ($300.00) Dollars per week, said fee to be paid each Saturday a. m. by certified check drawn only to the order of the National Sales System and to be delivered to the sales manager in charge, and the National Sales System agrees that said sales manager will conduct such sale on the above terms and will be *throughly* equipped therefor, will draft all copy for advertisements, signs and cards, will display merchandise to the very best selling advantage both in stores and windows and will assist in management and supervision of the sale. 200 accts. about $6,000 accts Rec.

"(a) Collection service is included without further charge except for printing and postage. (If desired check here)  √

"(b) Option on sales manager's service is granted for additional weeks at the same rate per week. (If desired check here)  √

"Under this arrangement Mr. Dodd or His representative Reserves the right to set prices on all merchandise, regulate advertising expense, approve of all advertising copy and handle all cash receipts.

"This Agreement is not subject to cancellation except by mutual agreement of both parties.

"The merchant or store, contracting with the National Sales System under this agreement hereby agrees not to re-employ the sales manager who is sent to render the service stipulated in this contract, at any time in the next five years in any capacity, directly or indirectly, as an agent or as an individual, except as a representative of the National Sales System under contract with the National Sales System and if said merchant or store should do so, such merchant or store hereby confesses damages to the National Sales System in the sum of $1,000.

"The National Sales System will use their best endeavor to give absolute satisfaction in the sale and to bring the sale to a satisfactory termination."

Sometime before December 12, 1953, Mr. Dodd wrote the plaintiff that he thought the four weeks to begin January 4 or 11, 1954, was a poor time to sell out at retail, and requested that the agreement be called off. This was not acceptable to Whiting, and, accordingly, Dodd's attorneys notified Whiting on January 4, 1954, that the agreement would not be performed by the defendant.

Mr. Gore, the southeastern representative of Whiting's firm, was the only witness for the plaintiff. His testimony, in effect, was that Whiting had suffered a loss of $600 by reason of the breach. The $600 was the anticipated profit lost since it would have cost Whiting $600 (the sales manager's salary) to have performed the contract. This deducted from the $1,200 called for under the agreement gave the estimate of loss therein provided.

The defendant introduced testimony to show that the time for the sale was inauspicious, and that, accordingly, the value of the services called for under the agreement would have been negligible to the defendant; and that inasmuch as the plaintiff had held himself out as somewhat of an expert in the field of "business analysis," the written agreement was the product of misrepresentation on plaintiff's part. However, Dodd, on the witness stand, admitted that he did not consider that Gore, in negotiating the contract, had misrepresented the prospects of selling out his stock of goods.

■ The appeal being taken by the plaintiff, without cross appeal by the defendant, the defendant cannot complain of the court's finding that the agreement was valid and binding, and that defendant had breached it. Both by assignment of errors and argument, the parties have narrowed the consideration on appeal to one main problem and others subsidiary thereto, i. e., what is the proper measure of damages for the breach of an agreement of this sort.

The appellant urges on us that the trial court was in error in not awarding damages for the profits Whiting could have made, and in support thereof cites Peck-Hammond Co. v. Heifner, 136 Ala. 473, 33 So. 807, and George v. Cahawba & Marion R. Co., 8 Ala. 234. The appellee's position is that the plaintiff's evidence as to loss of profits is insufficient, and that the profits claimed are speculative, conjectural or remote.

In Anderson & Co. v. Brammer, 4 Ala. App. 596, 58 So. 941, 942, this court said:

"* * * the proper measure being the contract price less the cost of  ,

completion, the profit that would accrue from the performance. Peck-Hammond Co. v. Heifner, 136 Ala. 473, 33 So. 807, 96 Am.St.Rep. 36; Smith v. Davis, 150 Ala. 106, 43 So. 729; Bonifay v. Hassell, 100 Ala. 269, 14 So. 46; Worthington & Co. v. Gwin, 119 Ala. 44, 24 So. 739, 43 L.R.A. 382."

■ We believe that where there has been a repudiation before performance, as in Peck-Hammond Co. v. Heifner, supra, or as in the case of construction contracts or other agreements for performance of services, the measure of damage is taken to be the contract price less the cost of completion; or, to put it another way, the net profit that would have been made had the plaintiff been allowed to perform. See cases collected in Anderson & Co., v. Brammer, supra.

■ In discussing the principle of "minimizing" or "mitigating" damages, there must be taken into consideration in calculating the loss to the plaintiff that which he has saved by reason of not having to perform, i. e., the expense which he would have incurred had he had to do the work. And should it be held that the plaintiff *must* adduce proof that he has given the defendant credit for these savings, then in this instance Whiting has made such a showing, and the evidence is uncontradicted on that point that Whiting's cost of paying a sales manager, whose service Whiting agreed to furnish to Dodd, would have been one-half of the fees called for in the contract of the parties.

We quote from Allen, Heaton & McDonald, Inc., v. Castle Farm Amusement Co., 151 Ohio St. 522, 86 N.E.2d 782, 784, 17 A.L.R.2d 963:

"When a plaintiff sues on a contract to recover the amount he would have received for the full performance prevented by a defendant's breach, he seeks in effect to recover as damages the profit from performance of the contract which profit defendant's breach prevented him from earning. In such a case, plaintiff has the burden of alleging and proving not only (a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him of relief therefrom.) Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract. United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168; Walton School of Commerce v. Stroud, 248 Mich. 85, 226 N.W. 883. See 5 Williston on Contracts, Rev.Ed., 3817, Section 1360."

See also Corbin on Contracts, § 1038; Restatement, Contracts, § 335; Matson v. Bradbury, 40 Ariz. 140, 10 P.2d 376. " * * * And the cost of doing the work was a necessary factor in estimating the profits which plaintiffs would have made had they been allowed to carry out the contract. * * *" Tennessee & Coosa Railroad Co. v. Danforth & Armstrong, 112 Ala. 80, 20 So. 502, 504.

■ Under the rule of mitigation, as a companion to the doctrine of saving of expenses, there is also the further principle as to avoidable consequences as set forth in the Restatement, Contracts, § 336: "(1) Damages are not recoverable for harm that the plaintiff could have foreseen and could have avoided by reasonable effort without undue risk, expense or humiliation." Dickerson v. Finley, 158 Ala. 149, 48 So. 548.

■ Here there was no evidence to show in furtherance of this principle that Whiting was or was not prevented from undertaking other and different contracts, or that his organization, which consisted of some 12 or 13 people in Gowanda, N. Y., and some 50 sales managers in the field, was operating in January, 1954, at such a capacity that Dodd's cancellation merely led to somebody else picking up the ticket for the performance. Be that as it may,

we are impressed by Professor Corbin's text, "The burden of proving that losses could have been avoided by reasonable effort and expense must always be borne by the party who has broken the contract." Corbin on Contracts, § 1039 (Vol. 5, p. 212). To which proposition he cites Fitzpatrick Square Bale Ginning Co. v. McLaney, 153 Ala. 586, 44 So. 1023, and Troy Fertilizer Co. v. Logan, 96 Ala. 619, 12 So. 712.

Here Dodd adduced no proof that the net profit would or could have been any less than $600, though he could have filed interrogatories addressed to the plaintiff.

We consider the burden of persuasion was on Dodd to show that Whiting had other expenses or opportunities for avoiding loss. The expenses credited were those of a nature to be expected from a reading of the contract; their amount or reasonableness was not rebutted. Therefore, we hold that there was nothing speculative, remote or illegal in Whiting's proposed measure of damages. This being so, the judgment below is in error as to the amount of damages awarded and is reversed and the cause remanded for proceedings consistent herewith.

Reversed and remanded.