In the Matter of PEEK CONSTRUC-
TION COMPANY, INC., Debtor.

Maxine ROOKS and Malium
Rooks, Plaintiff,

v.

PEEK CONSTRUCTION COMPANY,
INC., Frances Bissell, Trustee, Am-
South Bank, N.A., Goldome Credit Cor-
poration, Stone Lumber Company, Al-
lied Concrete Company, McCurdy Con-
crete, Inc., et al., Defendants.

Bankruptcy No. BK 85–4972
AP 86–0046.

United States Bankruptcy Court,
N.D. Alabama, N.D.

Dec. 9, 1986.

H. Kenan Timberlake, Huntsville, Ala.,
for debtor.

James T. Baxter, III, Huntsville, Ala., for
Maxine & Malium Rooks, Allied Concrete
Co. and McCurdy Concrete, Inc.

David Cauthen, Decatur, Ala., for Stone
Lumber.

Eyster, Key, Tubb, Weaver & Roth, De-
catur, Ala., for AmSouth Bank, N.A.

Garland C. Hall, III, Decatur, Ala., for
Trustee Frances Bissell.

William K. Bell, Huntsville, Ala., for Gol-
dome Credit Corp.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the Court on the Complaint of the Plaintiffs, Maxine Rooks and Malium Rooks. The plaintiffs' complaint specifically requested that the title to certain real property located in Madison County be cleared and that this Court determine the validity and priority of certain liens which might attach to said property. The following shall constitute findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FINDINGS OF FACT

Maxine and Malium Rooks hold title to a parcel of real property in Madison County, Alabama, by virtue of a deed recorded on May 25, 1985. The debtor, Peek Construction Company, Inc., (hereinafter Peek) contracted with the Rooks to construct a home on their property. On May 29, 1985, the Rooks gave Peek a promissory note and a mortgage on the Rooks' property to secure payment of the construction price. Peek then entered into a written construction contract with the Rooks on June 7, 1985. The mortgage given to Peek by the Rooks was recorded on July 2, 1985.

On July 12, 1985, Peek assigned the Rooks' mortgage to AmSouth Bank, N.A., and Stone Lumber Company made the first of several deliveries of construction materials to the construction site. Pursuant to its assignment, AmSouth Bank then advanced Peek $17,490.00 on July 15, 1985. The assignment from Peek to AmSouth of the Rooks' mortgage was recorded on August 6, 1985.

On or about August 8, 1985, Peek's attorney mailed a voluntary Chapter 11 petition to the Birmingham office for the Northern District of Alabama. Upon receipt of the debtor's petition, the Clerk of the Court notified Peek's attorney that the petition would not be accepted for filing until the court received a list of twenty largest creditors. Finally, on August 15, 1986, the Clerk of the Court stamped the petition filed and an order for relief was entered.

Peek never completed the Rooks' home, and they have brought this action requesting the court to clear title to their land and to determine the validity and priority of certain liens.

### CONCLUSIONS OF LAW AND APPLICATION TO FACTS

#### 1. CORRECT PETITION FILING DATE

The Clerk of the Birmingham Office initially refused to accept Peek's petition because the petition lacked a list of twenty largest unsecured creditors. The clerk based her action on a series of Amended Guidelines promulgated by the Bankruptcy Clerk of the Northern District of Alabama in August of 1983 which provided that "a Chapter 11 petition [would] not be accepted for filing by the Bankruptcy Clerk's Office unless ... [a] [l]ist of twenty (20) largest unsecured creditors ..." was filed with the petition. The Amended Guidelines were based, in part, on an interpretation of Federal Rule of Bankruptcy Procedure 1007(d) [1] which indicates that a Chapter 11 petition should be accompanied by the list of twenty largest creditors.

Two recent decisions handed down by the Eleventh Circuit Court of Appeals bring into question the propriety of the clerk's refusing to accept the Peek petition. See *Hunter v. Evans*, 791 F.2d 1487 (11th Cir. 1986) and *Rodgers v. Bowen*, 790 F.2d 1550 (11th Cir.1986). In *Hunter*, 791 F.2d at 1488, a district court refused to docket a

---

1. Federal Rule of Bankruptcy Procedure 1007(d) provides:

    (d) List of 20 Largest Creditors in Chapter 9 Municipality Case or Chapter 11 Reorganization Case. In addition to the list required by subdivision (a) of this rule, a debtor in a chapter 9 municipality case or a debtor in a volu[nt]ary chapter 11 reorganization case <u>shall</u> file with the petition a list containing the name, address and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders, as prescribed by Official Form No. 9. In an involuntary chapter 11 reorganization case, such list shall be filed by the debtor within 2 days after entry of the order for relief under [section] 303(h) of the Code. (Underlining for emphasis—not in original.)

petition for habeas corpus for failure to exhaust state remedies. The Hunter Court in a per curiam decision opined that "[u]pon receipt of such petition, the district court should have first docketed the petition and then considered the sufficiency of the allegations." Citing *Watson v. Ault*, 525 F.2d 886 (5th Cir.1976).

In *Rodgers*, 790 F.2d at 1551, the Eleventh Circuit Court of Appeals was faced with determining when a particular action was commenced, the Court stated that it found "no expressed intent by Congress to give the word 'commenced' any meaning other than that given in Fed.R.Civ.P. 3." The court, therefore, found that a "complaint [was] 'filed' for statute of limitations purposes when it [was] 'in the actual or constructive possession of the clerk,' ..." (citations omitted) irrespective of the failure of the plaintiff to pay the required filing fee. *Rodgers*, 790 F.2d at 1552.

This Court can find no justification for not applying the above decisions to the case at bar. The Amended Guidelines utilized to reject the Peek petition are nothing more than a local interpretation of Federal Rule of Bankruptcy Procedure 1007(d), and as stated by the Rodgers Court "local rules should not be elevated to the status of jurisdictional requirements." Hence, the clerk of the court was in error in refusing to docket the Peek petition when it was received in the Birmingham office on August 9, 1985. Put simply, the clerk of the court is not empowered to reject petitions presented to her for filing even if she deems them to be insufficient. The correct procedure is to docket all petitions and then set dismissal hearings for those petitions which fail to comply with local rules and/or the Federal Rules of Bankruptcy Procedure. The date for filing a bankruptcy petition is critical and affects substantive rights (Eg. Section 547 preference period, Section 548 and Section 544 avoidance periods, etc.).

## 2. UNPAID BALANCE

■ The Court now addresses the interest which Malium and Maxine Rooks have in the real property in issue. The evidence shows that the Rooks initially contracted with Peek Construction to have the house built on their lot for $58,700.00. The Rooks paid $4,500.00 of that amount to Peek Construction. The amount of $54,200.00 remains unpaid on the contract.

Under Alabama law, when one party breaches a contract, the other party is entitled to damages which would restore the injured party to a position he would have occupied if the contract had not been breached. *Files v. Schaible*, 445 So.2d 257 (Ala.1984). In the usual construction case, the measure of damages is the contract price minus the cost of completion. *Whiting v. Dodd*, 94 So.2d 411, 39 Ala.App. 80 (1957). In the instant case, Peek Construction breached its contract by not completing construction of the Rooks house. Therefore, the Court must determine what the Rooks must pay to receive the house in its present unfinished state. The Court finds that the Rooks owe a sum equal to the contract price of $58,700.00, minus the amount of $4,500.00 already paid to the builder, minus the cost of completing construction on the house.

Three estimates of the cost of completion of the Rooks house were introduced into evidence. Empire Construction Company estimated the cost of completing the house at $25,000.00. This was the smallest estimate before the Court. In addition to this amount, the evidence reflected that a further cost of $3,800.00 would be incurred for brick, mortar, and labor. Therefore, the Court finds that it would cost a total of $28,800.00 to complete the Rooks house as originally contracted. Subtracting this cost of completion from the amount of unpaid contract price lends the figure of $25,400.00.

The Court finds then, that the amount owed by the Rooks in order to obtain the house in its present unfinished condition is $25,400.00. Payment of this amount will give the Rooks their house free of any liens or interest of Stone Lumber Company, AmSouth Bank, or the Trustee Frances Bissell.

## 3. CLAIMS OF ALLIED PRODUCTS, INC., (ALLIED) AND McCURDY CONCRETE, INC., (McCURDY)

■ During the course of the construction of the Rooks' home, Peek contracted

with several building suppliers for the delivery of materials. Allied and McCurdy were two such suppliers. Both Allied and McCurdy delivered supplies to the Rooks' site, however, neither Allied nor McCurdy perfected a materialman's lien under Alabama law.

Pursuant to Code of Alabama 1975, Sections 35–11–210, 35–11–213, 35–11–215 and 35–11–218, a supplier of materials must, comply with three statutory requirements: (1) send notice of a lien claimed to the property owner, (2) file a verified statement with the Probate Court, and (3) file a complaint to enforce the lien in the Court. By their own admission neither McCurdy nor Allied took the required three steps to perfect any lien they might have held.

By way of defense, Allied and McCurdy assert that the intervention of bankruptcy by Peek Construction prevented the perfection of the materialman's liens. It is true that under 11 U.S.C. Section 362(a)(4), the filing of a petition in bankruptcy operates as a stay of any act to perfect a lien against the property of the estate. There is an exception to this general rule, however, provided in 11 U.S.C. Section 362(b)(3), which states that there is no stay "... of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title ...". Section 546(b) in turn provides that rights of the trustee "... are subject to *any generally applicable law* that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." (Emphasis added).

■ The materialman's lien available under Alabama statutory law is an example of such a "generally applicable law" within the meaning of Section 546(b) because a properly perfected materialman's lien will relate back to the date materials were furnished at the construction site, even though the perfection takes place months later. Code of Alabama 1975, Section 35–11–211. See *Matter of Fiorillo & Co.*, 19 B.R. 21 (Bankr.S.D.N.Y.1982), construing a similar statute in New York.

The Court concludes that the failure of both McCurdy and Allied to take the steps required to perfect their materialman's liens is not excused by the intervening bankruptcy filing by Peek Construction Company. Section 362(b)(3) expressly permits such perfection in spite of the entry of an order for relief. Therefore, the Court finds that McCurdy Concrete and Allied Products have lost their liens by the failure to perfect within the time period provided.

### 4. CLAIMS OF STONE LUMBER COMPANY (STONE), THE CASE TRUSTEE AND AMSOUTH BANK

■ Unlike Allied and McCurdy, Stone Lumber Company, a third supplier of building materials to the Rooks' site, did perfect a materialman's lien pursuant to Alabama law. Code of Alabama 1975, 35–11–218. As such, Stone's lien will attach to the unpaid balance of $25,400.00, which is to be paid into Court by the Rooks' in order that title to their home be cleared. Similarly, any mortgage or interest which previously attached to the Rooks' property and which is held by AmSouth Bank or the Trustee in this case shall also attach to the unpaid balance of $25,400.00. The remaining issue before the Court, then, is the determination of the respective interests, if any, that Stone Lumber Company, Inc., AmSouth Bank, N.A., and/or the Trustee have in the unpaid balance amount. This determination will be made by the Court at a later hearing.

An appropriate Order will be entered in accordance with this opinion.