177 So.2d 91

**J. C. MILSTEAD**

**v.**

**LOUISVILLE & NASHVILLE RAILROAD COMPANY.**

6 Div. 835.

Supreme Court of Alabama.

Sept. 10, 1964.

Rehearing Denied June 30, 1965.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

COLEMAN, Justice.

This is an appeal by plaintiff from judgment for defendant in action for personal injury to plaintiff and damage to his automobile which occurred, in the nighttime, when plaintiff's automobile and defendant's train collided at Oxmoor Crossing in Jef-

ferson County where defendant's railroad crosses a public highway.

The case was tried on amended Count I and Count A. In amended Count I, plaintiff alleges that defendant "did negligently operate a train in such a manner as to cause plaintiff to fall upon said crossing and his body (sic) twisted and injured and defendant negligently ran said train into plaintiff's automobile . . ." In Count A, plaintiff alleges that "defendant wantonly injured and damaged the Plaintiff by wantonly running said passenger train across said crossing. . . ."

We are of opinion that there is no evidence to support the allegation that defendant wantonly injured plaintiff. Plaintiff does not appear to insist that there is such evidence. Further consideration of Count A is pretermitted.

Defendant pleaded in short by consent with leave to give in evidence any matter which, if well pleaded, would be admissible in defense of the action, with leave to plaintiff to give in evidence like matter in reply.

Plaintiff rested and the court gave to the jury defendant's requested Charge 2 which recites:

"The court charges the jury that your verdict must be for the defendant."

Giving Charge 2 is assigned as error.

There are three parallel tracks at Oxmoor Crossing. The highway crosses the tracks at right angles. In approaching the railroad, plaintiff reached first the track known as the southbound main line. Trains travel on that track from plaintiff's left to his right. The second or middle track is a switching track used for switching and car storage. The third track is known as the northbound main line, on which trains travel from plaintiff's right to his left. The collision occurred on the northbound main line.

The road on which plaintiff approached the crossing curves downhill to the right and levels out. On the side of the highway,

on plaintiff's right, in the vicinity of the crossing, stands a concrete wall about twelve feet high. Between the wall and the highway there is a small station house which, plaintiff testified, is twelve feet from the southbound main line and appears to be approximately the same distance to the right of the highway. The significance of wall and station house, plaintiff contends, is that they blocked plaintiff's view to the right down the tracks in the direction from which trains on the northbound main line approached the crossing.

Plaintiff contends that his view to the right was further blocked by a string of railroad cars standing on the middle track. As we understand Tollett's testimony, he said that the first car on the center track was standing "about a railroad car length" from the crossing. Plaintiff testified that his best judgment of the distance, from the roadway to the beginning of the string of cars on the middle track, was 45 or 50 feet. Plaintiff testified:

"A You have to come out, plumb out from behind the car to see down the last track on this side, which would be Northbound."

Plaintiff is 50 years old. He testified that he was familiar with "this area" for thirty years; that he had had occasion, in the days and weeks just before the collision, to cross Oxmoor Crossing at the same general time of day; that he had observed the northbound train of that time of the evening many times and knew approximately what time it did run if it was not late.

The learned trial court made the following statement to the jury:

" . . . . The defendant has put on no evidence and under all of the evidence of the plaintiff, assuming all of it to be true, and taking all of it at face value, his evidence shows that he was guilty of contributory negligence in proceeding onto the track there without following that rule about stopping, looking and listening at such a point where he could determine that he could

proceed with safety, and so for that reason under the law I am required to give this charge to you. I take the responsibility of it, and if it is incorrect, then it is my responsibility."

As we understand the evidence, there is testimony by the plaintiff himself which would justify a finding by the jury that plaintiff did not stop, look, and listen before driving his automobile onto the northbound main line where the train struck the car, and the further finding that plaintiff's failure to stop was the proximate cause, or at least a proximate cause contributing to his injury and damage.

On the other hand, plaintiff also testified that, as he approached the crossing, he had "to pass the house and wall" before he could see down the track to his right; that he was aware "that this was a main line on this side of the crossing"; that when he got to the crossing he stopped and listened; that he looked both ways but saw no light; that he observed nothing on the southbound track; that he then started on across; that he observed the cars standing on the middle track as already mentioned; that when he stopped for the first track, he could not, because of the standing cars, see down the northbound main to his right; that he stopped a second time "Before I got into the other track"; that when he stopped there, he looked and listened; that on the right-hand side of his car "a glass was broke out"; that there was no noise or racket to interfere with his listening and his radio was broken; that he had good hearing; that he heard no "Diesel horn" blowing "until it was right on me." Plaintiff testified further:

"Q Then you stopped the second time out here along the second set of rails; is that right?

"A Before I got into the other track.

"Q And when you stopped there, did you look and listen?

"A I did.

". . . . . . . . . .

"Q How close did you come out to the Northbound lane when you stopped there the second time?

"A Well, just enough—I don't know how far it is from where I could see from the front end of the car back to the windshield, just enough where he could get me with the train, though. *I hadn't got over in the other track.*

"Q You say you got up to as close as you could to that track, in your judgment?

"A That's right.

"Q And then you undertook to proceed to cross this track?

"A I did.

"Q Now then, when you started in motion going across that third track, did you then see any light, or did any light come down on you?

"MR. SMITH: Your Honor, the witness is being led.

"THE COURT: I sustain.

"Q What did you observe when you got on the track?

"A The first I noticed is when I pulled over my front wheel just dropped off in the track there, he was right on me. Then he blew a couple of times, and was right on me then, and I crawled out to run, and I fell down and got my feet hung." (Emphasis Supplied.)

Plaintiff testified that the train blew only two times; that "that was all he blowed, he was right on me, he didn't blow anymore"; that plaintiff jumped out of the car; that he saw the headlight about the time he heard the whistle; that he "threw it in reverse, but the motor choked down and that was when I bailed out"; that his "stomach hit first," his feet flew out from under him and "got them hung between that plank when I made a plunge to get

away"; that plaintiff "got up to hold to the fender of the car"; that just as he "got to the front end of the fender a-holding to it, it swept it out from under me, it turned me around a time or two." As we understand the testimony, the train did not come in contact with plaintiff's body.

We have outlined plaintiff's testimony tending to show that he did stop, look, and listen before driving onto the northbound main track. As already noted, plaintiff gave further testimony on cross-examination as follows:

"Q Did you testify that you saw the train for the first time when you were between these two tracks (indicating):

"A Right."

Thus there was conflict in plaintiff's testimony as to whether he first saw the headlight on the engine after or before he drove the car onto the northbound main track.

In considering the correctness of refusing affirmative instructions, this court has said:

". . . Contradictory tendencies of evidence may occur in the testimony of one witness as to direct and cross examination. Jones v. Bell, 201 Ala. 336, 77 So. 998. Affirmative instruction was properly refused." Patterson v. Vest, 216 Ala. 312, 313, 113 So. 59.

■ Where several railroad tracks lie alongside or immediately adjacent, a traveler about to cross the same may be said, generally, to have exercised due care and prudence if he stopped, looked, and listened before he ventured upon the first track, and is not required, as matter of law, to repeat the precaution of stopping, looking, and listening at each of the said tracks in succession. No hard and fast rule can be laid down as to the duty to stop, look, and listen after entering upon the first of several parallel or immediately adjacent tracks. It is usually held to be a question of fact for the jury whether, under all the circumstances of the particular case, the plaintiff is guilty of contributory negligence, in passing across the several or subsequent tracks, without again stopping to look and listen, where such plaintiff had taken the initial precaution to stop, look and listen immediately or reasonably near to or before coming to or on the first track. Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 96 So. 358 [13], and authorities there cited.

■ The instant plaintiff testified that he stopped, looked, and listened before going on the first track. Whether he again stopped, looked, and listened, as a reasonable man would have done, before going into a zone of danger on the third track, was, as it seems to us, under all the circumstances of this case, a question of fact for the jury. We do not think that the evidence shows that plaintiff was, as a matter of law, guilty of contributory negligence.

The evidence is that the train whistle blew only twice, which was shortly before the collision. As we understand the evidence, there is no testimony that the bell was ringing at all. § 170, Title 48, Code 1940, provides:

"The engineer . . . must blow the whistle or ring the bell at least one-fourth of a mile before reaching any public road crossing . . . and continue to blow the whistle or ring the bell at short intervals, until it has passed such crossing . . .."

§ 173, Title 48, Code 1940, recites:

"A railroad company is liable for all damages done to persons, or to stock or other property, resulting from a failure to comply with the requirements of the three preceding sections, or any negligence on the part of such company or its agents; and when any person or stock is killed or injured, or other property destroyed or damaged by the locomotive or cars of any railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance with the requirements of such sections, and that there

was no negligence on the part of the company or its agents."

In reversing a judgment where the affirmative charge was given for defendant, on the second count for negligence, this court said:

" . . . One witness testified he heard the bell ring, but whether the whistle was blown or the bell rung at short intervals as the train approached the crossing is not shown.

" . . . . . .

"While the evidence shows that defendant's servants discharged some of the duties imposed by the statute, it does not show that they discharged all of them, and on the case as presented under the second count of the complaint the burden of proof was on the defendant to show a compliance with the requirements of the statute. Code, § 5476. It results, therefore, that the court erred in giving the affirmative charge for the defendant on the case as presented under this count." Miles v. Hines, 205 Ala. 83, 84, 85, 87 So. 837, 838, 839.

So, in the instant case, defendant did not carry the burden of showing compliance with § 170, supra, and the jury could find defendant guilty of initial negligence in failing to blow whistle or ring bell one-fourth mile before train reached the crossing and to continue to do so as the train approached the crossing. We are of opinion that the question was for the jury whether defendant's initial negligence was the proximate cause of plaintiff's damages.

Defendant argues that "all of plaintiff's damages resulted from the stalling of his automobile on the crossing," and that this case falls under the rule of Southern Ry. Co. v. Hale, 222 Ala. 489, 133 So. 8, and Louisville & Nashville R. Co. v. Griffin, 240 Ala. 213, 198 So. 345. Both of these cases involved a vehicle stalled on a crossing. We think both cases can and should be distinguished from the case at bar.

In the Hale case, "the evidence is without dispute that plaintiff drove upon the track without stopping, looking, and listening, and his contributory negligence therefore would bar any recovery rested upon defendant's initial negligence . . .." In the case at bar, as we have undertaken to show, the evidence of plaintiff's contributory negligence is not without dispute, and if, he is not guilty of contributory negligence, it would not bar recovery for defendant's initial negligence. This difference between the two cases makes the rule of the Hale case inapplicable in this respect.

In the Griffin case, "Defendant was absolved of all simple negligence by the testimony of the plaintiff that the whistle on the locomotive was blown for the crossing," and:

"The plaintiff has not discharged the burden of proof by showing that the truck was discovered in time by the engineer for him to have stopped his train before it reached the point of collision and that the engineer negligently failed in his duty in the premises." (240 Ala. at page 217, 198 So. at page 348)

Thus, in Griffin, no breach of duty by defendant was shown, and the holding is that the trial court erred in refusing the affirmative charge for defendant. In the case at bar, we have indicated that the evidence will support a finding that defendant was guilty of initial negligence. This difference distinguishes Griffin from the instant case.

Plaintiff insists that the jury could find defendant guilty of subsequent negligence. We do not think plaintiff has shown by either direct or circumstantial evidence that plaintiff's automobile was discovered by the engineer in time for him to have stopped the train before it reached the point of collision and that the engineer negligently failed to perform his duty in the premises.

Plaintiff argues that the court erred in sustaining objection to admitting in evi-

dence four photographs marked plaintiff's Exhibits 14, 16, 21, and 22. The court admitted eighteen other photographs, offered by plaintiff, depicting the crossing and adjacent territory. These eighteen exhibits are before us and appear to present an adequate and clear picture of the scene. Exhibit 14 appears to show a wall or embankment. We do not understand its relevancy. Exhibit 16 appears to show the concrete wall near the station house and crossing. This wall appears to be shown by plaintiff's Exhibits 13 and 15 which were admitted in evidence. Exhibit 16 sheds no additional light on the issues. Exhibits 21 and 22 show simply one rail of track with a stick or ruler lying across the rail. We are of opinion that the excluded pictures shed no additional light on the issues in the case and that refusing to admit them was without injury to plaintiff.

For error in giving the affirmative charge for defendant, the judgment is reversed and the cause remanded.

Reversed and remanded.

All the Justices concur.

## ON REHEARING

Defendant says: "We do not understand the Cunningham [Cunningham Hardware Co. v. Louisville & N. R. Co., 209 Ala. 327, 96 So. 358] case . . . to stand for the proposition for which it was cited by this Court. In the Cunningham case, the plaintiff was induced to start across the multiple tracks by a flagman who (according to plaintiff's testimony) had waved him across, . . . ." We take defendant's argument to be that the general rule stated in Cunningham, and repeated in our opinion in the instant case, has no application to crossings where a flagman, or other invitation to one crossing a crossing, is not present.

We are of opinion that the rule is not limited to cases where a flagman gave a signal to the injured party and induced him to start across the tracks. The following

cases; Georgia Pacific R. Co. v. Lee, 92 Ala. 262, 9 So. 230; Louisville & Nashville R. R. Co. v. Bryant, 141 Ala. 292, 37 So. 370; and Louisville & Nashville R. R. Co. v. Loyd, 186 Ala. 119, 65 So. 153; are cited in Cunningham in support of the general rule to which we refer. As we read the opinions in the three cases last cited, no flagman was present at the crossing in any one of the three cases. At the report of Cherry v. Louisiana & Ark. R. Co., 121 La. 471, 46 So. 596, 17 L.R.A.,N.S., 505, also cited in Cunningham, cases from other states may be found.

In the Lee case, supra, the street was occupied by three tracks of defendant's railroad. We quote part of what the court said with respect to plaintiff's duty, to wit:

"Another phase of the evidence goes to show that plaintiff's driver stopped the wagon just before turning into the crossing, and when within twenty-five or thirty feet of the intersection of the main track and the road along which he was travelling, for the purpose we have stated, and, remaining stationary at that point for some moments—minutes perhaps—listened the while for moving cars, but did not look along the main track because of the intervening box cars to which we have referred; and, hearing nothing to indicate peril in the attempt to pass over, he drove upon the crossing and came in collision with the train. On this aspect of the evidence, if the driver did stop, and listen so near to the main track at the point of its crossing the road as to readily avail himself of the assurance of safety conveyed to him by the absence of any noise indicating the approach of cars—so near as that the situation thus indicated could not and would not have an element of danger injected into it between the time of setting his vehicle again in motion and the time of passing over the track— we can not affirm as a matter of law that the duty was upon him to also look along the track before attempting to cross it, a duty which could only be

discharged in this instance, and on this tendency of the evidence with · respect to supervening box cars, by going in front of the mules, and passing around the end of the car on the side track next to the road. \* \* \*.

"It was for the jury to determine under all the circumstances whether the driver was negligent in not looking up and down the main track before attempting to cross it. If there were other noises calculated to deaden the noise of an approaching train, it was more incumbent on the driver to look as well as to listen. \* \* \*" (92 Ala. at pages 267, 268, 269, 9 So. at pages 232, 233)

In the Bryant case, supra, the crossing was across four or five tracks. The opinion recites in part:

"Plaintiff testified that he listened before going upon the crossing and heard no sound of a train except that made by the switch engine. There was also testimony tending to show that the bell of the passenger train was not ringing, and that no other signal was given before reaching the crossing.

"As the only assignment of error insisted upon was the refusal of the general affirmative charge with hypothesis, requested by defendant, we have stated the tendencies of the evidence most favorable to plaintiff's side of the controversy. The insistence seems to be that this charge should have been given because the evidence shows that plaintiff was guilty of contributory negligence in attempting to cross the fourth track. Unless it can be affirmed as matter of law that it was his duty to alight from his buggy. and go to a point near enough to this track so as to look along and down it beyond the point where his vision was obstructed by the switch engine and the cars, the charge was properly refused. \* \* \*." (141 Ala. at pages 293, 294, 37 So. at page 371)

In the Loyd case, supra, there were three tracks, i. e., two side tracks and a main track. This court said:

"The plaintiff, as already stated, claimed that he stopped and looked and listened for the train when he was about 30 feet from the track. He knew when he drove on the track that it was then about 'train time,' as he testified that he knew the schedule of this train. It was therefore plainly for the jury to say, if the plaintiff did stop and look and listen, as he claims to have done, whether he was not guilty of contributory negligence in not again stopping and looking, and —if he could not see the train because of obstructions—listening for the train then due, before allowing his horse to go upon the track." (186 Ala. at page 129, 65 So. at page 156)

The three last cited cases, we think, support the general rule as to multiple track crossings, even where flagman or other invitation is absent.

Appellee indicates concern " . . ' over what appears to be an abandonment by this Court of the long standing rule that one who passes over a railroad crossing is under the continuing duty to stop, look and listen, if necessary, more than one time."

■■ We do not intend to abandon any rule. Certainly, one crossing railroad tracks is under a duty to exercise reasonable care, and it may be that he is under the duty to stop more than once if reasonable care requires him to do so. We did not intend to say, and do not think we said, that one crossing a multiple track crossing is never under a duty to stop more than one time. What we tried to say is that whether the instant plaintiff exercised reasonable care is, under the evidence in this case, a. question for the jury. The instant plain-tiff testified that he stopped twice before going on the track where the train struck his car. We held that it was for the jury to say whether plaintiff was guilty of negligence which proximately contributed to his damage.

"The many cases in this jurisdiction on the rule of 'stop, look and listen' were considered in Cunningham Hardware Co. v. Louisville & Nashville R. Co., 209 Ala. 327, 96 So. 358, to the effect that it cannot be affirmed as a matter of law in every case and under all circumstances that there is an absolute duty to stop, look and listen before a traveler may go on a railroad crossing. . . ." Sloss-Sheffield Steel & Iron Co. v. Willingham, 240 Ala. 294, 297, 199 So. 28, 32.

In the Willingham case, the majority limited concurrence in granting certiorari to the ground of giving an erroneous charge, and, in the companion case of Sloss-Sheffield Steel & Iron Co. v. Peinhardt, 240 Ala. 207, 212, 199 So. 33, 37, the majority of the court were:

". . . of the opinion that the question of contributory negligence was properly submitted to the jury and approve the opinion of the Court of Appeals in the case of Sloss-Sheffield Steel & Iron Co. v. Willingham, 29 Ala.App. 569, 199 So. 15, on that question."

In Willingham, the Court of Appeals noted that:

"In the statement of facts contained in appellant's brief it is said that the railroad track of the defendant was a single track . . .." (29 Ala.App. 574, 199 So. 19)

Most of defendant's special pleas were that plaintiff negligently failed to stop, look and listen. Plaintiff testified: "that he did not know that defendant's railroad crossed said street at the point where the collision occurred." (29 Ala.App. at page 576, 199 So. at page 21) We understand, in Willingham, that plaintiff, being unaware of location of the railroad crossing, did not stop, look, or listen at all, yet the court held his contributory negligence to be a question for the jury.

In Atlantic Coast Line R. Co. v. Flowers, 241 Ala. 446, 3 So.2d 21, this court responded to argument wherein Cunningham was relied on. This court, referring to Cunningham and plaintiff's duty, said: "There are some situations illustrated there which are said to make the duty an issue for the jury." 241 Ala. 452, 3 So.2d 25. This court also said: "The facts here are different from those in the Peinhardt and Willingham cases, supra, in respect to the very incidents which in one instance takes the issue from the jury and in the other makes it a jury question." (Emphasis Supplied.) 241 Ala. 452, 3 So.2d 25.

■ Thus the correct rule seems to be that under certain facts, plaintiff's failure to stop, look, and listen at the proper time and place may be contributory negligence as a matter of law, while under other facts, plaintiff's failure to stop, etc., may not be, as a matter of law, contributory negligence, but may be, on that issue, a question for the jury.

On original deliverance, we decided that, under the facts here, the issue of plaintiff's contributory negligence presented a question for the jury.

In the instant case, there is testimony that plaintiff not only stopped before entering the crossing, but that he also stopped again after he had crossed at least one of the tracks. Defendant contends that plaintiff is guilty of contributory negligence, as a matter of law, because his second stop was at a point, marked by "X" on the blackboard, where ". . . he could not see the approach of a train on the Northbound track . . . ."

We quote once more from plaintiff's testimony:

"Q You mean you slowed up here (indicating)?

"A No, I stopped there; slowed up behind it back there until I got up close to the track where I could see out behind that house.

"Q What I am asking you, is it not a fact that you stopped twice before you got to the Southbound main?

"A No, I didn't stop no twice, that I know of.

"Q You didn't stop twice?

"A Not as I know of. I stopped once there where that stop sign, and once up there where that middle track is so I could see around them cars."

If plaintiff's second stop was at a point ". . . up there where that middle track is so" . . . (he) "could see around them cars," then the jury must say whether he was guilty of contributory negligence.

▌ Defendant argues that we cannot review the giving of affirmative charge because all the evidence that was before the trial court is not before us, citing, inter alia, Bates v. Louisville & Nashville R. Co., 21 Ala.App. 176, 106 So. 394. Defendant says that the transcript discloses that the jury had before them a diagram on a blackboard, that the witnesses testified with reference to the diagram, that without it we cannot understand the testimony, and that, although the blackboard was not introduced into evidence, we cannot review the giving of the affirmative charge without having the blackboard before us.

We have before us what purports to be a photostat or photograph of a blackboard diagram bearing the separate certificate of the clerk of the trial court and by him "attached as part of the transcript" in the instant case. This picture seems adequate to meet the objection urged by defendant. As to whether we could review the giving of the affirmative charge without this picture, see Byars v. Howell, 209 Ala. 191, 95 So. 871.

Opinion extended.

Application overruled.

All the Justices concur.