195 So.2d 789

**FIDELITY & CASUALTY COMPANY OF NEW YORK**

**v.**

**James B. DeLOACH.**

**6 Div. 287.**

Supreme Court of Alabama.

Feb. 16, 1967.

Zeanah & Donald, Tuscaloosa, for appellee.

Jones, McEachin, Ormond & Fulton, Tuscaloosa, for appellant.

HARWOOD, Justice.

This is an appeal from a judgment rendered in favor of James B. DeLoach, the plaintiff below, damages being assessed at $2,250.

The complaint was based upon a surety undertaking entered into by the Fidelity and Casualty Company of New York, as surety, and the Lloyd A. Fry Roofing Company, as principal, by which Fry, as principal "guarantees under the conditions herein contained" that during the guaranty period it will make at its own expense any repairs of damage caused by ordinary wear and tear by the elements on a roof installed on a building owned by DeLoch.

The surety undertaking, in the amount of $2,250, contains the following provisions:

"The foregoing obligation, however, is limited by the following express conditions, the performance of each of which shall be a condition precedent to any right of claim or recovery hereunder.

* * * * * *

"5. After application of said materials to the roof, no structure shall be installed thereon or attached thereto, unless Fry be first notified of such proposed installation, and given an opportunity to make necessary roofing application recommendations with respect thereto, and materials used to join said proposed installation to the roof are applied in accordance with such roofing application recommendations approved by Fry."

As originally filed, the suit was against Fidelity for a breach of the bond. The complaint averred that Lloyd A. Fry Roofing Company had manufactured and sold the necessary materials for constructing a built-up roof on a store building owned by the appellee DeLoach, and alleged a breach of the bond. The complaint was thereafter amended by adding as a party defendant the Lloyd A. Fry Roofing Company. However, Fry's motion to quash the attempted service on it of the summons and complaint was granted, leaving Fidelity as the sole defendant.

The evidence presented below tends to show that in 1958 DeLoach contracted with Shirley Palmer to place a roof on a commercial building. This building was divided into several compartments or stores. The roof covered the entire top of the building, as a single unit. Palmer is a bonded applicator of Fry roofing products, and as such he is authorized to apply Fry products under their supervision and by their specifications. He maintains roofs so applied for two years. After completion of a roof, he certifies that the same has been applied according to specifications and requests that a bond be issued therefor.

Palmer handles other roofing products besides those made by Fry and in the instant case he alone decided to put Fry products on this roof. These products had been purchased from distributors and not directly from Fry.

Upon completion of the roof, he certified to Fry that it had been installed according to their specifications, and thereafter a bond was prepared and forwarded to him by Fry. He then delivered the bond to DeLoach. The cost of the bond, $150.00, was included in his costs for installing the roof.

The roof was completed in the latter part of 1958, probably in December. Thereafter DeLoach rented the stores to different businesses.

About 30 months after the installation of the roof, leaks appeared in several of the stores. Palmer made some effort to remedy the leaks, apparently without success. Both he and DeLoach contacted Fry who sent two representatives there to inspect the roof. A square of the roof was cut out and forwarded to Fry for inspection.

It was Fry's contention after examination of the roof by their representatives, and analysis of the portion of the roof forwarded to them, that the leaks were not the result of any defect in the roof, in that the outer membranes of the roof were intact, but that the leaks occurred from condensation under the roof due to faulty installation on a wet deck.

On the other hand DeLoach presented testimony to the effect that the roof began to leak some thirty months after its installation, and would leak after each rain, and in dry weather there was no drip into the stores; that DeLoach had a test performed by putting dye on the roof, then flooding the roof, after which the water leaking into the stores was colored. This was sufficient to present to the jury whether the leaks resulted from ordinary wear and tear by the elements.

Actually, no argument is presented in this aspect, but only as to whether the court erred in refusing Fidelity and Casualty Company's requested charges affirmative in nature because, as contended by appellant the appellant had been relieved of its liability as surety because of structures placed thereon after completion of the roof without notice being given to Fry of such installations. The evidence is uncontradicted that Fry was not notified prior to the installation of any vents or structures put into the roof after its completion, if such installations were so made.

In connection with any installations made on the roof after its completion, Mr. DeLoach testified as follows:

"Q. Had there been any construction on the top of the building or anything else that had anything to do to affect the roof in any way?

"A. Not to my knowledge, no sir."

Later Mr. DeLoach again testified that there was no additional construction "to my knowledge."

However, on cross examination, Mr. DeLoach did testify that a TV antenna was installed on the roof, but did not state when the antenna was installed.

Mr. James Rowland Skelton, a witness for the plaintiff and owner of the Audio House, which occupies one of the stores, testified that he had a TV antenna installed on the roof in the latter part of 1959. This antenna had to be reinstalled because it was set upon a concrete block and it had to be reset in the roof to keep it from punching holes in the roof.

Shirley Palmer, a witness for the defendant, testified that the TV antenna in question had four guy wires attached to it, two of which were connected to the roof by means of screw-in anchors. Palmer testified that this antenna caused a leak in the roof, which he had repaired after the antenna was reinstalled. Mr. Palmer further testified that after the roof was installed some power company "masts" projecting through the roof were pulled sideways, we presume by the weight of the wires, and that leaks were caused around these masts. These masts were on the roof at the time it was installed, but after they had tilted, a flat plate was placed on the roof and supports were attached to the pipes that had tilted.

Mr. Palmer further testified that after the construction of the roof, a vent was installed in the roof over the business known as the Chick-N-Treat through which the fumes in the kitchen were withdrawn.

Some of the tenants of these store buildings, as witnesses for the plaintiff, testified as to the existence of these various installations. No question was propounded to them by counsel on either side as to when these installations were placed on the roof. However, the evidence does show that these store buildings were leased after the building had been completed. Such facts would seem to be strongly corroborative of Mr. Palmer's testimony to the effect that certain of the vents, etc., were

placed on or in the roof after its construction by him.

Appellant counsel first argues that the court erred in refusing appellant's written requested charges which were affirmative in nature and asserts that the uncontradicted evidence is to the effect that no notice was given to Fry prior to additional structures placed upon the roof; and that such notice was an essential condition precedent to liability under the contract forming the basis of this suit.

It is to be noted that the complaint avers that the plaintiff "has performed all conditions required of him by said bond."

■ If the conditions set forth in bond are conditions precedent to liability, then the complaint must aver that the plaintiff has complied with all of the provisions of the contract. Clinton Mining Co. v. Bradford, 192 Ala. 576, 69 So. 4; Floyd v. Pugh, 201 Ala. 29, 77 So. 323.

■ Therefore, if the conditions of the present bond are to be considered as conditions precedent to liability, not only must there be an averment of compliance with said conditions, but such averment must be supported by proof reasonably tending to establish it. In other words, the averment of performance of all conditions being material and necessary, a failure of proof of such compliance is fatal to a plaintiff's right of recovery, and the defendant would be entitled to have given requested charges affirmative in nature. Carter v. Franklin, 234 Ala. 116, 173 So. 861; Ford v. Sellers, 257 Ala. 404, 59 So.2d 799; Gordon v. Gleason, 262 Ala. 421, 79 So.2d 54.

In brief counsel for appellee DeLoach contend that the provisions of the undertaking now being considered do not create a condition precedent, but "are conditions subsequent, exclusions or exceptions from the coverage of the bond and not conditions precedent" and therefore constitute defensive matters to be shown by the defendant appellant.

Section 250 of the Restatement of the Law of Contracts defines a condition precedent as a fact (other than the lapse of time) which, unless excused "must exist or occur before a duty of immediate performance of a promise arises, in which case the condition is a 'condition precedent.'" In accord with this definition are our cases of Taylor v. Rhea, Minor 414; Nesbitt v. McGehee, 26 Ala. 748

■ A condition precedent may relate either to the formation of a contract, or to liability under it. Williston, Contracts, Sec. 666A, 3rd Ed.

■ Whether a provision in a contract is a condition precedent depends, not upon formal words, but upon the intent of the parties, to be deduced from the whole instrument. Floyd v. Pugh, 201 Ala. 29, 77 So. 323.

■ By the express provisions of the undertaking which is the basis of this suit, it is provided that the liability of the surety is "limited by the following express conditions, the performance of each of which shall be a condition precedent to any right of claim or recovery hereunder." Paragraph 5 of the undertaking, supra, requires notice to Fry before any structure is installed or attached to the roof. As observed in Fogg v. Suburban, Rap. Transit Co., 90 Hun 274, 35 N.Y.S. 954:

"It would be difficult to see how a condition precedent could be expressed in more apt or appropriate terms."

We hold that the provisions in the undertaking now being considered do set up a condition precedent to appellee's recovery.

■ Counsel for appellant has directed his argument toward the refusal of charges affirmative in nature. While it might appear that the weight of the evidence would tend to show that structures were added to the roof after its completion, the weight of

the evidence is not before us, in the argument as presented. The plaintiff below, DeLoach, did testify that to his knowledge no structures were added to the roof after its completion. True, on cross examination he appears to have admitted that the TV antenna was added, but at a time not deducible from DeLoach's testimony. While this may present a contradiction between the plaintiff's testimony on direct examination and on cross examination, the court was justified in refusing the charges affirmative in nature in such a situation.

■ As stated in Jones v. Bell, 201 Ala. 336, 77 So. 998:

"Though there may be material contradictions between the direct and cross examination of a witness, yet this does not warrant the court in disregarding his testimony; but the credence to be accorded the witness must be left to the jury."

Innumerable additional authorities to this same effect may be found in the Alabama Digest, 18A, Trial, ☞ 140(1).

The plaintiff's testimony, even though contradictory furnished a scintilla of evidence to the effect that no structures were put on the roof after its completion. The court therefore did not err in refusing the appellant's charges which were affirmative in nature. Milstead v. Louisville and Nashville R. Co., 278 Ala. 196, 177 So.2d 91; Ten Ball Novelty and Mfg. Co. v. Allen, 255 Ala. 418, 51 So.2d 690.

The appellant introduced as a witness in the trial below Kenneth Tucker, manager of the Memphis plant of the Fry Roofing Company, Donald Kelly, manager of the bonded roof department of the Fry Roofing Company, and G. L. Oliensis, director of research for the Fry Roofing Company, and Shirley Palmer, whose roofing company installed the roof in question.

By experience and training these witnesses were qualified as experts in the matter of construction of roofs and defects in roofs.

Tucker testified that from his examination of the roof and from his examination of the sample square cut from the roof that he could tell whether the roof was defective. He stated that in his opinion the roof was defective because it was being attacked by water trapped underneath the roof. He found no defect in the roof on his inspections of it, and in his opinion, the defect was from moisture trapped underneath and from the roof being laid on a wet deck.

Kelly testified that after examining the sample taken from the roof, he found the bottom felts were decomposing from water trapped underneath, and analysis of the roof sample showed no water could pass through the top membrane.

Oliensis testified that in his opinion, the cause of the failure of the roof was from water entrapped underneath, and examination of the sample taken from the roof showed that water could not penetrate through the top membrane of the roof.

Palmer testified that he could not say what caused the roof to leak, that it could be any one of a dozen things, and that if he picked out any one thing, he would be merely guessing.

During the direct examination of these witnesses, after they had testified as above set forth, each was respectively asked whether in his opinion, and based upon his examination of the roof, or of his examination of the sample taken from the roof, the leaks in the roof resulted from ordinary wear and tear by the elements. The court sustained the appellee's objection to the above questions in each instance, and counsel for appellant argues that error resulted in each of the above rulings.

■ As to the ruling on the question propounded to the witness, Palmer, clearly no error resulted since Palmer had disavowed any opinion or knowledge as to what was the cause of the leaks.

504

The remaining expert witnesses testified in much greater detail than we have set forth that the leaks were caused from moisture trapped underneath the roof; that the top membrane of the roof was sound and that no water could penetrate through it. Such testimony necessarily negatived the contention that the leaks resulted from ordinary wear and tear.

While the court might well have permitted the questions to be answered to which objections were sustained, it would appear that these rulings were harmless since the appellant had the full benefit of the detailed testimony of these witnesses that in their opinion the defect in the roof was caused by moisture entrapped underneath the roof, and that water could not penetrate the top membrane of the roof. We are therefore unwilling to say that the substantial rights of the appellant were probably injured by the rulings in this instance. Supreme Court Rule 45.

Counsel for appellant further argues that the court erred in overruling appellant's objection to a question propounded to DeLoach on his direct examination as follows:

"Q. What other repairs became necessary on that roof after it began to leak?"

Counsel argues that no evidence had been introduced that other repairs had become necessary. DeLoach had testified that he had had to have the roof replaced at a cost of $3,600 because of its leaking, and had paid additional sums in connection with repairs on the roof. The question therefore did not assume facts not in evidence and no error resulted in the court's ruling in this instance.

Appellant's witness, Palmer, testified on cross examination that he asked Fry on many occasions to find out whether water was coming from inside the roof, or from the outside.

He was then asked if he had not tried his best for a period of a year and a half to get Fry to make tests on the roof.

After overruling of the objection, the witness answered:

"I attempted to get them on several occasions to give me the answer, yes."

Counsel for appellant argues that "tried his best" called for a conclusion on the part of the witness.

While technically the phrase "tried his best" was an improper term in the question, in view of Palmer's immediately preceding testimony that he had requested Fry on many occasions to investigate the cause of the leaks in the roof, and his reply to the question that he had attempted to get Fry on several occasions to give him an answer, the fault in the question is innocuous. It would indeed be hypertechnical to cast a reversal on the trial court in this instance. Supreme Court Rule 45.

Owen Meredith, Jr., testified that he was a member of the real estate firm that handled and managed the rentals on the DeLoach store, and that he had managed the rental of the property and was familiar with the complaints about the leaks in the stores. He then testified over appellant's objection that the complaints were first made about the middle of 1961.

Appellant argues that this testimony is hearsay, in that it was not shown that these complaints were received by Meredith personally, but could have been received by another member of his firm. In view of Meredith's testimony that he had handled the property, we consider this contention fallacious.

Finding no reversible error in the points presented by appellant, this judgment is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.