The Facts
Appellant, Comeq, Inc., is a machine tool importer and distributor with offices in Baltimore, Maryland. Its business is the purchase and reselling of heavy machinery and equipment purchased by Comeq from various manufacturers.
One machine sold by Comeq is an "angle bending roll" manufactured by a company called "Swedish Tool," which markets its products under the name of "Roundo." That machine is used in the steel fabricating industry to roll angles, channels and beams into circular shapes to be used for supports. It is a standard machine, listed in the Roundo catalog and manufactured pursuant to standard specifications. Of approximately 420 machines sold by Comeq prior to March 1978, about 300 were angle bending rolls. In the year prior to March 1978, Comeq sold approximately 70 to 80 machines.
Beginning in 1974, Comeq made a number of contacts with appellee and cross-appellant Mitternight Boiler Works, Inc., in an effort to sell Mitternight one or more angle bending rolls. In October of 1977, specific negotiations ensued and on 22 March 1978, Comeq delivered to Mitternight a telex offering to sell a specific *Page 266 
model of the roll for $74,424, plus $2,226 for a digital readout.
By return telex, Mitternight accepted Comeq's offer to sell one model R7S:
 "Consider this wire to be our firm commitment to purchase from you one model R7S Roundo Angle Bending Roll per quoted specifications for $74,424.00 firm. P.O. Number will follow upon completion of IDB procedures. Advise adjusted Ocean Freight FAS Port of Mobile and discount for 90 per cent advance payment pendant mounted digital readout of roll position is also req'd per quoted additional $2,226. We appreciate your long attention to this matter."
This acceptance was received by Comeq on 27 March 1978.
On 28 March 1978, Comeq committed in writing to Roundo to purchase an angle bending roll to fulfill its contract with Mitternight. The cost of the machine to Comeq was $52,578.25.
On 29 March 1978, after Comeq was committed to purchase the machine from Roundo, Mitternight advised Comeq it would not purchase the R7S as agreed. The machine ordered by Comeq for resale to Mitternight was indeed purchased by Comeq from Roundo and was later sold by Comeq to another customer. The sale price for the machine was the same as it would have been to Mitternight.
In September of 1978, Comeq sued Mitternight for breach of contract. It claimed as damages the profit lost on the agreed sale due to Mitternight's alleged breach. The case proceeded to trial. Mitternight made an oral motion for directed verdict at the conclusion of the plaintiff's evidence. The ground set forth for that motion was that there was no evidence of a binding contract. It did not touch upon plaintiff's theory of damages.
At the conclusion of the evidence, the court expressed concern over whether Comeq's theory of damages was appropriate under Alabama law. It advised counsel for both parties it would charge the jury as to Comeq's lost-profit theory of damages but that, in the event of a verdict in favor of Comeq, it would consider setting aside such a verdict on the basis that only nominal damages were recoverable. Consequently, it reasoned, if it was reversed on appeal, the jury verdict could be reinstated without the necessity of a new trial.
The trial court then charged the jury as to Comeq's lost-profit theory of damages. It also instructed the jury that, in the event of a verdict in favor of Comeq, the rate of interest to be applied was six per cent.
After deliberating, the jury found Mitternight had breached the contract, and it rendered a verdict for Comeq in the amount of $30,951.75. That verdict was based on the profit lost on the sale plus interest at the rate of six per cent per annum from September 1978. Judgment was entered on the verdict and costs were taxed against Mitternight.
Mitternight then filed motions for new trial and for judgment notwithstanding the verdict, both grounded on the damages issue. Comeq filed a post-trial motion requesting the court to enter judgment calculated on the basis of twelve per cent interest from the date of breach of contract, rather than six per cent interest, calculated from the date of judgment as charged.
Comeq's motion for amendment of the judgment regarding interest was denied, but Mitternight's motion for judgment notwithstanding the verdict was granted. In granting that motion, the court set aside the judgment for $30,951.75 and entered judgment in favor of Comeq for the nominal sum of $100 plus costs.
By its ruling, the trial court determined: (1) evidence was sufficient to support the determination that a contract existed and that Mitternight had breached it; and (2) Comeq was not entitled under § 7-2-708, Code 1975, to recover the profit lost on the sale.
Comeq appeals to this court from the final judgment entered by the trial court and also from that court's denial of its motion to recalculate the interest. *Page 267 
Mitternight cross-appeals, alleging the trial court erred to reversal by failing to determine the evidence insufficient to support a finding that a contract existed between the parties.
 I
Three issues are presented on appeal. First, Mitternight, in its cross-appeal, contends the trial court erred in determining that a contract existed between Mitternight and Comeq.
There was ample evidence at trial that the parties agreed to a contract of sale. Comeq's telex of 22 March 1978 stated, "We offer you one new Roundo angle bending roll size R7S." Mitternight responded by telex of 27 March 1978, "Consider this wire to be our firm commitment to purchase from you one model R7S Roundo angle bending roll." Alabama's Commercial Code sets forth a flexible rule regarding the formation of a contract for the sale of goods:
 "(1) A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
". . . .
 "(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis of giving an appropriate remedy."
Section 7-2-204, Code 1975. The Code also provides that:
 "(1) A definite and reasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."
Section 7-2-207, Code 1975.
Mitternight's telex of 27 March 1978 was not expressly conditioned upon Comeq's assent to any different or additional terms. It clearly constituted an acceptance of Comeq's previous offer. Therefore, the trial court correctly submitted the question of the existence of a contract to the jury for determination. Mitternight's motions for directed verdict were properly denied and, likewise, the trial court was correct in refusing to set aside the jury's finding that a contract existed and that it had been breached by Mitternight.
 II
Comeq contends the trial court erred in the construction of §7-2-708, Code 1975. That section provides:
 "(1) Subject to subsection (2) and to the provisions of this article with respect to proof of market price (section 7-2-723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this article (section 7-2-710), but less expenses saved in consequence of the buyer's breach.
 "(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 7-2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds or resale."
Mitternight claims that any lost-profit damages to which Comeq is entitled must be computed in accord with U.C.C. § 2-708 (1), which requires that a set-off be made for all profits received by plaintiff as a result of sale to a third party of the machine ordered for Mitternight.
Comeq cites U.C.C. § 2-708 (2) as the proper measure, however, in view of its capacity to provide angle bending machines *Page 268 
not only for Mitternight but for third parties as well. Comeq reasons that the sale to a third party would have been made regardless of Mitternight's breach and that, therefore, Mitternight is not entitled to a set-off for proceeds from a third-party sale. We agree.
Professors White and Summers have discussed appropriate application of § 7-2-708 (2) in the following terms:
 "Unfortunately, the draftsmen never identified or articulated any principle to unite these cases [under 2-708 (2)]. In fact it appears that they did not identify the characteristic of the `standard priced' class. That characteristic is not the `standard pricedness' of the goods the seller is selling but the fact that he will lose one sale when Buyer No. 1 breaches and, if he resells Buyer No. 1's goods to Buyer No. 2, he will still not be made whole by difference-money because he will have lost one sale, one profit, over the course of the year. To illustrate, assume a contract for the sale of a washing machine with a list price of $500. Buyer breaches, and seller resells that washing machine at the same list price the buyer had been willing to pay. However, the resale buyer is one of seller's regular customers who had intended to purchase a washing machine from him anyway. If the seller's total cost per machine was $300, he stood to gain an aggregate profit of $400, that is $200 profit from each of two sales. Clearly the 2-708 contract-market differential formula is inadequate in this situation since it gives no damages to the seller who has lost a $200 profit because of the breach. In such a case the damage award should be the lost profit, that is $200, for this will place the seller `in as good a position as performance would have done.'"
J. White R. Summers, Handbook of the Law Under the UniformCommercial Code (1972) at 226-227.
The treatise continues:
 "If the seller is in a market in which the demand for the product exceeds the available supply (as for example the car market immediately after World War II), he will lose nothing when one party breaches, and he should recover no damages even if his goods are `standard priced.' . . ."
Id. at 227.
There is no Alabama case which considers the application of §7-2-708 (2) to the middleman-seller. However, other jurisdictions have, under § 2-708 (2), consistently awarded the middleman-seller damages for his buyer's breach, even where the seller has resold the goods to a third party, if the seller cannot be compensated under § 2-708 (1). Teradyne, Inc. v.Teledyne Industries, Inc., 676 F.2d 865 (1st Cir. 1982); TCPIndustries, Inc. v. Uniroyal, Inc., 661 F.2d 542 (6th Cir. 1981); Famous Knitwear Corporation v. Drug Fair, Inc.,493 F.2d 251 (4th Cir. 1974); Nederlandse Draadindustrie NDI B.V. v.Grand Pre-Stressed Corporation, 466 F. Supp. 846 (E.D.N Y 1979); Neri v. Retail Marine Corp., 30 N.Y.2d 393, 397,334 N.Y.S.2d 165, 285 N.E.2d 311 (1972); Snyder v. HerbertGreenbaum and Assoc., 38 Md. App. 144, 380 A.2d 618 (1977);Distribu-Dor, Inc. v. Karadanis, 11 Cal.App.3d 463,90 Cal.Rptr. 231 (1970). These cases are in line with our longstanding rule in Alabama that in contract law the primary duty of the court is to put the injured party in the same position he would have been in had the terms of the contract not been violated. Zippy Mart of Ala., Inc. v. A B CoffeeServ., Inc., 380 So.2d 833 (Ala. 1980).
The facts of this case fit within the perimeters of § 7-2-708
(2). Comeq is in the business of reselling, as a middleman, standard machines and equipment available in volume for Comeq to resale to its various customers. The record reveals that, prior to the contract with Mitternight, Comeq had sold approximately 300 angle bending rolls, and after the contract date sold numerous others. Had Comeq sold and delivered the angle bending roll to Mitternight as agreed, the record indicates it still would have sold the exact same model for the same price to another customer pursuant *Page 269 
to independent negotiations. Because of Mitternight's breach, Comeq lost the profit on that particular sale to Mitternight. But for the breach, Comeq would have received the benefit of both sales, not just one. The market price contract price formula under § 2-708 (1) is inadequate to make Comeq whole. Were it applied here, Comeq would be left without a remedy for the breach.
Therefore, the trial court erred in determining that lost-profit damages are not recoverable by Comeq for Mitternight's breach. As shown above, such damages are recoverable under § 7-2-708 (2). Because of our disposition of the above issue, we find it unnecessary to consider whether the trial court erred by considering it on motion for judgment notwithstanding the verdict.
 III
Comeq also questions the trial court's calculation of interest due Comeq on the judgment. The damages proved are the sort that permit prejudgment interest. Section 8-8-8, Code 1975, provides:
 "All contracts, express or implied, for the payment of money, or other thing, or for the performance of any act or duty bear interest from the day such money, or thing, estimating it at its money value, should have been paid, or such act, estimating the compensation therefor in money, performed."
In Lapeyrouse Grain Corp. v. Tallant, 439 So.2d 105 (Ala. 1983), this court held such prejudgment interest should be calculated at the rate of six per cent per annum pursuant to §8-8-1, Code 1975, and that post-judgment interest, where, as here, no other rate is established by contract, shall bear interest at the rate of twelve per cent per annum. See our discussion of this issue in Burgess Mining ConstructionCorporation v. Lees, 440 So.2d 321 (Ala. 1983). In this case, Comeq is entitled to prejudgment interest of six per cent from the date of breach until the judgment was entered and post-judgment interest of twelve per cent thereafter.
For the above reasons, the judgment of the circuit court is reversed as to all issues, except the issue regarding the existence of a contract between Comeq, Inc., and Mitternight Boiler Works, Inc., and this cause is remanded to that court for entry of judgment consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.