This is an appeal from a judgment finding that the Appellant, Henry L. Cobbs, Jr., had breached a written contract in which he had agreed to purchase a residential house and lot in Montgomery, Alabama.
On March 7, 1983, Cobbs contracted to purchase a house for $67,300; the house was to be built by Fred Burgos Construction Company (BCC) at 4612 Young Farm Court. The contract called for BCC to build a house in accordance with its stock house plan 300B. It further provided that any changes in the stock plan must be mutually agreed upon and that the additional costs of these changes were to be *Page 337 
paid by Cobbs in advance of the commencement of work on the house.
The contract provided that the sale was subject to Cobbs's obtaining a "VA 100% loan" in the amount of $67,300. Of this amount, $300 was a financing fee. It also provided that Cobbs and BCC were "to exert all reasonable effort and diligence for Purchaser to obtain such loan. . . ."
On March 8, 1983, Cobbs made application through Real Estate Financing, Inc., for a VA (Veterans Administration) loan in the amount of $67,300. During the ensuing months Cobbs decided on the changes he desired, priced certain items, and consulted with the architect.
On June 16, 1983, Cobbs met with Joe Harwell of Montgomery Metro Realty, Inc., and agreed on the changes he desired and their price of $9,837. However, Cobbs at that time decided that he did not want to pay this amount in advance as the contract provided, because he did not want to tie up his money and because he wanted the contract to reflect the full purchase price of the home.
Cobbs then embarked on a series of negotiations with BCC in an attempt to modify the contract so that his desired changes would not be payable in advance. Cobbs offered to increase the binder from $1,000 to $2,000 and BCC counter-offered that the binder be increased to $3,000. They were unable to reach an agreement, but Cobbs left a $1,000 check with Joe Harwell and then departed from Montgomery for an extended trip abroad, apparently leaving instructions that any negotiations be conducted through his attorney. On June 23, 1983, after learning through a telephone conversation with Joe Harwell that BCC considered the additional $1,000 check insufficient, Cobbs stopped payment on the check.
On July 12, 1983, an appraisal from the VA, requested by Real Estate Financing, Inc., as necessary for the loan application, arrived. The appraisal valued the house at approximately $2,950 less than the total cost to Cobbs for the house. BCC then notified Cobbs, through his attorney, that for a total binder of $2,950 it would modify the contract.
On July 19, 1983, BCC poured the concrete for the slab foundation, after receiving word that these terms were agreeable to Mr. Cobbs and that a check for $2,950 was forthcoming. Merrily Burgos also testified that it was essential that the slab be poured at that time because the house was on a cul-de-sac and, because of space limitations, it was necessary to coordinate the installation of sewers, laterals, and water lines with those of surrounding houses or else the lot would have to be left vacant.
The check for $2,950 never arrived. Cobbs arrived back in Montgomery in late July or August. On August 24, 1983, a meeting was held at which Cobbs said he was willing to pay a total binder of $3,000 in order to modify the contract. BCC, however, requested that the binder be increased to $6,000. Being unable to reach an agreement to modify the contract, Cobbs, at the conclusion of the meeting, tore up the $1,000 check that he had previously given Joe Harwell. The next day, August 25, 1983, Cobbs called Real Estate Financing, Inc., and gave instructions to cancel the whole deal. A loan officer from Real Estate Financing, Inc., testified that Cobbs would have definitely qualified and obtained the loan for $67,300 had the loan process been completed.
BCC declared Cobbs in breach of the contract, alleging that he had repudiated it in its entirety. The trial court's judgment in favor of BCC awarded it $15,759 for damages, interest, and costs.
At the outset, we note that because this is an ore tenus case, the trial court's findings of fact are favored with a presumption of correctness and a judgment based on them will not be disturbed absent a showing that they are palpably wrong, without supporting evidence, or manifestly unjust. Gertz v.Allen, 376 So.2d 695 (Ala. 1979); Sudduth v. Sudduth,366 So.2d 1102 (Ala. 1979).
Cobbs contends that the contract with BCC was subject to two conditions precedent *Page 338 
which never occurred and, therefore, that he should not be held liable.
The first clause Cobbs contends was a condition precedent was "This sale is subject to a purchaser obtaining a VA 100% loan . . . in the approximate amount of . . . . $67,300." BCC admits that this is a condition precedent, but points to the next sentence, which contains a provision that "Purchaser and Seller agree to exert all reasonable effort and diligence for Purchaser to obtain such loan. . . ." BCC argues that Cobbs cannot raise his failure to obtain financing as a failure of a condition precedent because he withdrew his loan application. According to BCC, the failure to obtain financing under these circumstances does not excuse Cobbs from his duties under the contract.
BCC's position amounts to an argument that Cobbs breached his promise to exert all reasonable efforts to obtain financing. Whether a party has substantially performed a promise under a contract is a question of fact to be determined from the circumstances of each case. Bruner v. Hines, 295 Ala. 111,324 So.2d 265 (1978).
It was Cobbs's duty under the contract to exert all reasonable effort and diligence to secure a VA loan in the amount of $67,300. Cobbs could not withdraw from this contract simply because an agreement was never reached on a modification which would allow him to finance the changes he desired in the stock plan. On August 25, 1983, when Cobbs called Real Estate Financing, Inc., and told them to withdraw his application for VA financing, he breached the contract provision concerning financing, and thus the trial court's ruling was correct.
The second condition precedent is alleged to be found in the clause which provides that "Changes are to be mutually agreed upon by purchaser and seller and additional cost thereof paid by purchaser in advance of commencement of work." Cobbs apparently contends that because he never made payment for the additional costs, the contract should never have become binding.
It is well settled that whether a provision in a contract is or is not a condition precedent is dependent not upon formal words but upon the intent of the parties, to be deduced from the entire instrument. Gertz, supra; Fidelity Casualty Co. ofNew York v. DeLoach, 280 Ala. 497, 195 So.2d 789 (1967); Floydv. Pugh, 201 Ala. 29, 77 So. 323 (1917).
The record indicates that BCC required the inclusion of this clause with the intention of protecting itself, because it did not want to be left with a highly specialized house that would be difficult to market. The record also indicates that BCC abandoned this requirement upon an understanding that Cobbs was forwarding a check for $2,950 and because it was necessary to coordinate the installation of utilities with other houses in order that the lot not have to be left vacant. As noted earlier, this $2,950 check never arrived.
In light of these facts the trial court's finding that the contract was valid and thus that this clause was not a condition precedent to formation seems well supported by the evidence.
Cobbs lastly contends that the trial court erred in finding that BCC was entitled to damages.
It is well settled that damages awarded for breach of contract should return the injured party to the position he would have been in had the contract been fully performed.Comeq, Inc. v. Mitternight Boiler Works, Inc., 456 So.2d 264
(Ala. 1984); Files v. Schaible, 445 So.2d 257 (Ala. 1984); B M Homes, Inc. v. Hogan, 376 So.2d 667 (Ala. 1979). The proper measure of damages in cases such as this is the difference between the price agreed upon in the contract and the cost of performance or, in other words, the profit. Whiting v. Dodd,39 Ala. App. 80, 94 So.2d 411 (1957); J.B. Anderson Co. v.Brammer, 4 Ala. App. 596, 58 So. 941 (1912); Danforth v.Tennessee C.R. Co., 93 Ala. 614, 11 So. 60 (1896); George v.Cahawba M.R. Co., 8 Ala. 234 (1845). *Page 339 
Merrily Burgos testified that the contract price of the house was $67,000 and that the cost of completion was $56,200. The difference in these two amount is $10,800. She further testified that the exact lost profit was $10,827 and this was the amount awarded as damages by the trial court. The amount of damages awarded by the trial court is supported by the evidence. Likewise, interest and costs awarded in the amount of $4,932 were reasonable and proper.
The judgment is hereby affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and HOUSTON, JJ., concur.